## Hertz v. Hertz

*Larry W. Wolf,* for plaintiff.
*Samuel K. Gates,* for defendant.

SPICER, *P.J.,* March 2, 1981—Plaintiff, Judy Hertz has brought an action for declaratory judgment under the provisions of The Divorce Code, 23 P.S. §206. That section gives either party the right to have the validity or invalidity of a marriage established by decree of court when the validity of the marriage is either denied or doubted.

Defendant in this case is Jack Hertz. Calling the parties plaintiff and defendant becomes tedious after awhile. Referring to them as husband and wife is inappropriate in this type case. Therefore, we opt for the personal and will refer to them as "Judy" and "Jack" respectively.

Judy and Jack married ceremonially April 23, 1960. They were divorced August 6, 1973. While both were fully competent to remarry, they resumed cohabitation in November or December, 1973, and remained living together until sometime in May, 1978.

Judy testified she resumed cohabitation after Jack called and said, "Come back, I still love you."

She stated both agreed to resume a marital status. She said there was an express agreement to remarry and that they kept rings from their first marriage. According to her, they held themselves out as husband and wife until Jack told her in 1978 he did not want her as his wife anymore.

Jack testified that Judy asked him to allow her to move back with him after the divorce in 1973. According to him, he made it plain that he would have to think about her request and that if he allowed her to move in it would only be for the sake of their children. He stated that Judy understood they were not married, there was no exchange of rings, and that he kept his wedding ring until 1977 or 1978 at which time he gave it to his son.

Each called witnesses and introduced exhibits tending to prove his or her position. Judy called her brother, Wayne Hartley, who said that he had seen Jack wearing a wedding ring in the fall of 1977. Knowing the parties had been divorced in 1973, he asked Jack about the ring and was told that nothing had changed, that Judy was still Jack's wife. A cousin, Barbara Jean Simpson, said the parties had the reputation of being husband and wife.

Judy also introduced income tax returns for 1974 which clearly showed the parties filed as husband and wife.

On the other hand, in a bankruptcy petition filed in 1978 or 1979 she referred to Jack as her ex-husband. She also listed her marital status as divorced on April 20, 1978, in an application for public assistance.

Jack's relatives testified that Jack stated on several occasions the only reason he had taken Judy back was for the sake of the children and that he would never marry her.

Jack admitted that he referred to Judy as his wife and listed her as such on insurance forms. However, he said this was out of the force of habit and that he also referred to her as his ex-wife.

He produced documents, such as a deed and mortgage, describing him as single. He attempted to explain the income tax returns by saying someone else had prepared them and that since he was supporting Judy he felt justified in claiming her as a dependent.

Up to this point, the evidence favors Judy's version. Since the parties were formerly husband and wife, there are no policy reasons to regard the relationship searchingly. We would regard it as any other case involving a factual dispute about the intentions and relations of the parties. The court would consider the reputation of the parties in the community, their declarations about the relationship and their cohabitation: Dowd v. Dowd, 275 Pa. Superior Ct. 454, 418 A. 2d 1387 (1980); Estate of Gavula, 490 Pa. 535, 417 A. 2d 168 (1980). Were these all that we would consider, we would be impelled to hold that Judy has carried her burden by a preponderance of the evidence in proving a valid marriage.

However, there is one additional fact which becomes critical to our decision.

Jack married someone else in a ceremonial marriage July 12, 1979. Judy said she didn't know beforehand that Jack was remarrying or that their children were to witness the ceremony.

On the other hand, Jack was positive Judy knew. He said he told her of his plans eight months before the ceremony. Her response, according to him, was "I hope you'll be happy." He also said she congratulated him on the marriage two months after the ceremony.

Jack certainly did not appear to have kept the marriage a secret. He took his children. He was very positive about his testimony. The court accepts it as true.

Jack argues that Judy is now estopped from asserting that she and Jack are married. Perhaps the words "Speak now or forever hold your peace" have some meaning.

However, we decline to decide this case on the basis of estoppel. Judy was not present at the second ceremonial wedding and her ability to act may have been rather limited.

That does not end the court's inquiry, however. Our task is still to determine if the parties entered into a civil contract of marriage. Cohabitation and reputation do give rise to a rebuttable presumption of marriage. People live together without intending to marry and we must look for proof of an agreement to enter into the relationship at the present time: Estate of Gavula, supra. As in any dispute, a very pertinent consideration is how the parties themselves viewed the relationship. Behavior or statements which are inconsistent with a party's position are certainly relevant in determining an issue of fact.

Judy's words and lack of protest concerning Jack's second ceremonial marriage are inconsistent with her position that a valid marriage existed between her and Jack. This inconsistency tips the scales back in Jack's favor.

Accordingly, the attached decree will be entered.

## ORDER

And now, March 2, 1981, the decree of the court is that the alleged marriage subsisting between the parties after 1973 is hereby declared to be invalid.