**Audrey CHLIEB, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 1306, Docket 85–6014.**

United States Court of Appeals, Second Circuit.

Argued June 26, 1985.

Decided Nov. 22, 1985.

Paula Galowitz, New York City, for plaintiff-appellant.

Robert L. Begleiter, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., and Patrick B. Northup, Asst. U.S. Atty., Brooklyn, N.Y., on brief), for defendant-appellee.

Before KEARSE, CARDAMONE and FRIEDMAN,* Circuit Judges.

FRIEDMAN, Circuit Judge.

This is an appeal from two orders of the United States District Court for the Eastern District of New York (Henry Bramwell, *Judge*) that upheld the determination of the Secretary of the United States Department of Health and Human Services (Secretary) that the appellant, Audrey Chlieb, was required to refund the amount she had been overpaid as wife's insurance benefits under the Social Security Act as a result of her misrepresentation to the Secretary that she had been ceremonially married to the wage earner. We affirm.

I

The appellant cohabited with Jack Chlieb in New York from June 1958 until September 1976. The Chliebs never participated in a formal marriage ceremony. They had two children; one was born in 1959 and the other was born in 1961.

On January 13, 1966, Jack Chlieb applied for social security benefits for himself and

---

* United States Court of Appeals for the Federal Circuit, sitting by designation.

for his family. In his application, he stated that on June 5, 1958, he had been ceremonially married to Audrey Chlieb. On January 22, 1966, Audrey Chlieb applied for wife's insurance benefits under 42 U.S.C. § 402(b) (1964), stating that she had married Jack Chlieb in June 1958, in Buffalo, New York, in a marriage performed by a "[c]lergyman or other authorized public official." The applications were granted, and the appellant received her first benefits in April 1966.

In September 1976, Audrey Chlieb and Jack Chlieb separated. In October 1976, the appellant gave an unsolicited written statement to the Social Security Administration (SSA) that she "never married Jack Chlieb," but that she had been living in a "common-law" relationship with him in New York since 1958. The following month, Jack Chlieb advised the SSA that he and Audrey Chlieb were "never married," but that they had lived together as "man and wife."

As a result of these statements, in January 1977 the SSA notified Audrey Chlieb that her benefits had been terminated, that she had been overpaid $2,376, and that she was required to refund the overpayment. She did not contest the termination of benefits, but challenged the recovery of the overpayment.

After a *de novo* evidentiary hearing, an administrative law judge found that the appellant had never been married to Jack Chlieb, that she had been overpaid wife's insurance benefits and was not without fault in receiving them, and that recovery of the overpayment would not be waived. The administrative law judge also found that the Secretary had not presented evidence regarding the computation of the overpayment, and ordered the Secretary to provide this information. The administrative law judge's decision became the final decision of the Secretary when the Appeals Council refused to review it.

Ms. Chlieb then filed suit in the district court challenging the Secretary's decision. In June 1980, the court upheld, as supported by substantial evidence, the Secre-

tary's findings that the appellant had never been married to Jack Chlieb, that she had not been entitled to wife's insurance benefits, and that she was not without fault in receiving them. The court, however, ruled that there was no evidence in the record showing the .basis upon which the Secretary had calculated the amount of the overpayment. It remanded the case to the Secretary to enable him "to substantiate [his] determination that an overpayment ha[d] occurred as a result of the fact that the Plaintiff improperly received Wife's Insurance Benefits."

This court dismissed Ms. Chlieb's appeal from the district court order on the ground that "[a]n order remanding to the Secretary for determination of a critical issue is not final, and thus is not appealable."

Following a hearing on the remand, at which Mr. Steven Solinsky, a benefit authorizer for the SSA, explained the computation of the overpayment (see discussion below), another administrative law judge held that Ms. Chlieb had been overpaid $2,887 and was required to refund that amount. The Appeals Council adopted that decision, which thereby became the decision of the Secretary.

The district court affirmed the Secretary's decision requiring a refund of the overpayment. The court ruled that the finding that Ms. Chlieb had been overpaid $2,887 was supported by substantial evidence, that the procedures on remand did not deny the appellant due process, and that the court could not consider the appellant's other challenges to the Secretary's decision since the court's previous decision had resolved them and reconsideration was precluded "because of the doctrines of *res judicata* and the law of the case."

II

The appellant contends that the record does not contain substantial evidence to support the Secretary's determination that the relationship between her and Jack Chlieb was not a valid common-law marriage.

Under the Social Security Act, an applicant for benefits is the wife "of a fully or currently insured individual ... if the courts of the State in which such insured individual is domiciled at the time such applicant files ... would find that such applicant and such insured individual were validly married at the time such applicant files" or, if the courts would not so find, is deemed to be the wife of the insured if "under the laws applied by such courts in determining the devolution of intestate personal property," the applicant would have the same status as a wife. 42 U.S.C. § 416(h)(1)(A) (1982). When Ms. Chlieb filed the application for wife's insurance benefits in January 1966, the insured individual, Jack Chlieb, was domiciled in New York. Therefore, for the appellant to be treated as Jack Chlieb's wife under the Act, she must show that as of January 1966, the New York courts would have recognized her relationship with Jack Chlieb as a common-law marriage or would have permitted her to inherit personal property from him under its intestacy laws.

As the appellant recognizes, New York has not permitted common-law marriages to be entered into in that State since 1933. *In re Estate of Benjamin*, 34 N.Y.2d 27, 311 N.E.2d 495, 355 N.Y.S.2d 356 (1974). She bases her claim that she was the common-law wife of Jack Chlieb on the fact that New York recognizes common-law marriages that are validly entered into in other states. *Merritt v. Chevrolet Tonawanda Division, General Motors Corp.*, 50 A.D.2d 1018, 377 N.Y.S.2d 663 (1975). She contends that she and Jack Chlieb established a common-law marriage in accordance with the laws of Ohio and Pennsylvania while traveling through those States and spending one and two nights there, respectively, in August 1973.

This argument, however, does not aid the appellant. For Ms. Chlieb to qualify as the common-law wife of Jack Chlieb, she would have to show that the New York court would have recognized her as his wife "at the time (Ms. Chlieb) file[d]" her application for benefits. She filed her application in 1966, seven years before she and Jack Chlieb allegedly established their common-law marriage while traveling in Pennsylvania and Ohio. The appellant has not shown that the New York courts would find that she and Jack Chlieb "were validly married at such time," *i.e.*, when she filed her application for benefits in 1966, as the statute required.

In any event, appellant has not shown that she and Jack Chlieb entered into a common-law marriage that Ohio or Pennsylvania would recognize.

Under Pennsylvania law, marriage is a civil contract that requires "proof of an agreement to enter into the legal relationship of marriage at the present time." *Estate of Gavula*, 490 Pa. 535, 540, 417 A.2d 168, 171 (1980). Where "a relationship between a man and a woman is 'illicit and meretricious' in its inception, it is presumed to so continue during the cohabitation of the parties. That presumption will be rebutted only if the consent of both the parties to enter into a valid marriage is established by *clear and convincing* evidence." *In re Cummings Estate*, 330 Pa.Super. 255, 264, 479 A.2d 537, 542 (1984).

Under Ohio law, "[t]he fundamental requirement to establish the existence of a common-law marriage is a meeting of the minds between the parties who enter into a mutual contract to presently take each other as man and wife." *Nestor v. Nestor*, 15 Ohio St.3d 143, 146, 472 N.E.2d 1091, 1094 (1984). The absence of an agreement to marry *in praesenti* "precludes the establishment of such a relationship even though the parties live together and openly engage in cohabitation." *Id.* The elements necessary to establish a common-law marriage must be proved by clear and convincing evidence. *Id.*

The evidence in the record shows that the appellant and Jack Chlieb never agreed to marry. Ms. Chlieb testified that she refused Jack Chlieb's only proposal of marriage to her, which was made just prior to their cohabitation, and that by the time she wanted to marry him, after their first child was born, Jack Chlieb said that "he felt it

was too late to marry." The two nights were spent in Pennsylvania and the one night was spent in Ohio after Jack Chlieb made that statement. The record does not show that Audrey and Jack Chlieb had any intent to marry when they spent three nights in those States.

The appellant has not shown, by the clear and convincing evidence that Pennsylvania and Ohio require, the elements of a valid common-law marriage in either State. The district court properly upheld, as supported by substantial evidence, the Secretary's findings that appellant and Jack Chlieb had not been validly married.

Similarly, the appellant has not shown that under the laws the New York court would apply "in determining the devolution of intestate personal property," she would "have the same status with respect to the taking of such property as a wife ... of such insured individual." She argues only that she would have been permitted to inherit from Jack Chlieb on his intestacy as a common-law wife under a common-law marriage they established in 1973. Her rights as an alleged common-law wife, however, are determined under the first provision of section 416(h)(1)(A), which refers to the woman's status as a wife when she filed her application for benefits, and not by the second provision, which deals with situations where the state courts would not find that there had been a valid marriage. The applicant has not referred us to any New York statute or case that would permit a woman who cohabited with a man but did not establish a valid common-law marriage with him to inherit personal property from him upon his dying intestate, and we know of none.

### III

Although the Act provides for the Secretary's recovery of overpayments of benefits, 42 U.S.C. § 404(a), it prohibits recovery from "any person who is without fault if such adjustment or recovery would defeat the purpose" of Title II of the Act, "or would be against equity or good conscience." 42 U.S.C. § 404(b) (1982). The regulations provide that a recipient is without fault if the recipient did not know and should not have known that the overpayment or the information on which it was based was incorrect. 20 C.F.R. § 404.507 (1985).

The appellant contends that she was without fault because Jack Chlieb coerced her into filing a false application by threatening to kill her, and that the Secretary's finding that she was not without fault was not supported by substantial evidence.

The appellant's own testimony, however, was that she filed the application for wife's insurance benefits and signed it with her maiden name because she had "ambivalent feelings about the legality of the marriage." She testified that when she applied for benefits she either "had to go and back [her] husband up and say that it was legalized, or ... call my husband a lier [sic] to Social Security officials on his wage." Although she also testified that at that time she did not feel well and that her thoughts were not clear or quick, the record does not establish that her medical problems led her to make the false assertion in the application that she had been ceremonially married in June 1958 or made her unaware of its falsity. Furthermore, although she claimed in her initial statement to the agency that her false statement resulted from Jack Chlieb's duress against her, she did not repeat these assertions of duress in the subsequent agency hearings.

We hold that the district court correctly concluded that substantial evidence supported the Secretary's determination that Audrey Chlieb was not without fault, and affirm that ruling. *Valente v. Secretary of Health and Human Services,* 733 F.2d 1037, 1041 (2d Cir.1984). Accordingly, we need not consider whether recovery of the overpayments would defeat the purpose of Title II or would be against equity and good conscience, since those factors come into play only if the recipient is without fault. *See Viehman v. Schweiker,* 679 F.2d 223, 227 (11th Cir.1982); *Goldstein v. Harris,* 517 F.Supp. 1314, 1318–19 (S.D.N. Y.1981).

## IV

The appellant also argues (A) that the record does not support the Secretary's determination that she had been overpaid benefits, and (B) that because the Secretary used an incorrect basis in calculating the amount of overpayment, the record does not support the amount found.

■ A. According to Ms. Chlieb, the existence of an overpayment to her depends upon the correct amount of benefits payable to each member of the household. Her theory is that any payments due to other household members properly would be offset against payments to her, since the benefits she received were used for household purposes. She describes an allegedly necessary 11-step procedure for determining the existence of an overpayment to her, and argues that the Secretary failed to provide substantial evidence that all of the 11 steps were performed.

The Act, in providing for the Secretary's recovery of overpayments, specifies that an overpayment occurs when a "payment has been made to any person" of "more than the correct amount." 42 U.S.C. § 404(a)(1). Because Audrey Chlieb was never validly married to Jack Chlieb, ceremonially or at common law, under the Act she was not entitled to any wife's insurance benefits. Thus, any payments that she received were overpayments because they were "more than the correct amount" to which she was entitled, which was nothing.

The Secretary therefore properly found, based upon substantial evidence, that Ms. Chlieb had received an overpayment. In order to make that determination, the Secretary was not required to follow the 11-step procedure that the appellant would require.

■ B. In the hearing on remand, Mr. Solinsky explained at length how he calculated the amount of the overpayment Ms. Chlieb received. The witness was a Social Security benefit authorizer who was experienced in computing benefit rates.

Mr. Solinsky testified that he reviewed the record of actual payments made to everyone who received benefits based on the account of the wage earner, Jack Chlieb; that he then determined what benefits the family was entitled to; and that he used the difference between these figures as the amount of the overpayment. Mr. Solinsky explained that the amount of overpayment he calculated differed from the prior amount the Secretary had determined because prior calculations had been based on a "computerized condensation of the history of payments, which does not always reflect the exact amounts of payments."

Mr. Solinsky testified that, applying this three-step procedure, he calculated that from April 1966 through June 1971, Ms. Chlieb's share of the total payments to the family was $1,419.70. From July 1971 through July 1976, the checks were issued in Ms. Chlieb's name; these totaled $6,341.70. Thus, the total overpayment made to Ms. Chlieb was $7,761.40.

Mr. Solinsky explained that once it was determined that Ms. Chlieb was not entitled to any payments, retroactive benefits of $4,828.20 became due to the children. He then set off that amount, as well as $46.20 that Mr. Chlieb had remitted on behalf of Ms. Chlieb on a 1966 overpayment, against the total unauthorized payment to Ms. Chlieb of $7,761.40. As a result, he determined that Ms. Chlieb had received an overpayment of $2,887.

On the basis of the record, the district court properly held that the Secretary's determination that Ms. Chlieb had received overpayment of $2,887 was supported by substantial evidence. In contrast to the ample evidence in the record supporting Mr. Solinsky's calculations, the record contains no evidence to substantiate the appellant's contention that the 11-step procedure she espouses is necessary to determine the overpayment. Mr. Solinsky's method of calculation provided a reasonable and appropriate basis for ascertaining the overpayment. Neither the Act nor the regulations required the use of the appellant's 11-step method.

## V

The appellant raises two procedural objections.

■ First, she contends that she was denied an opportunity for a full and fair hearing because the administrative and district court decisions on the issues of fault, waiver, and recovery were made before the Secretary provided evidence of the overpayment calculation. There is no reason why these related issues cannot be determined before the Secretary makes and explains his decision on the amount of the overpayment. Indeed, the SSA originally decided all the issues, and the bifurcation to which the appellant objects resulted only because the administrative law judge and the district court concluded that the record did not adequately show the basis for the calculation of the overpayment.

Second, the appellant makes the related argument that because at the first hearing the administrative law judge did not determine the amount of the overpayment, the notice of that hearing was inadequate. She concedes, however, that the notice informed her that the threshold issue to be decided was whether she had been overpaid $2,376. The notice further stated:

> The specific issues on which findings will be made and conclusions will be reached are: If there was an overpayment, then: (1) whether the claimant was without fault in causing the overpayment of $2376.00 and if so, (2) whether recovery of the overpayment would defeat the purpose of Title II and would be against equity and good conscience.

This language adequately informed the appellant that the hearing would cover both the threshold issue of overpayment and the subsidiary issues designated under (1) and (2). Furthermore, we have held that it was permissible for the Secretary to decide the fact of overpayment and the other subsidiary issues as he did, before submitting evidence showing the basis for calculating the amount of the overpayment.

## VI

Finally, the appellant argues that, to prevent undue hardship to her, she should not be required to refund the overpayment. She relies on *Rosenberg v. Richardson*, 538 F.2d 487, 488 (2d Cir.1976), as authorizing the award of wife's benefits to a woman who was never legally married to the wage earner.

*Rosenberg*, however, is quite unlike the present case. The Rosenbergs intended to be legally married, they made their wedding plans on advice of legal counsel, and they participated in a civil marriage ceremony performed by a justice of the peace. Their marriage was not legally effective only because the state courts would not accept as valid Mr. Rosenberg's ex parte Mexican divorce from his first wife.

In holding that Mrs. Rosenberg was entitled to widow benefits, the court relied on 42 U.S.C. § 416(h)(1)(B). That section provides that where an applicant was not the wife or widow of an insured individual under 42 U.S.C. § 416(h)(1)(A), but "such applicant in good faith went through a marriage ceremony with such individual resulting in a purported marriage between them which, but for a legal impediment not known to the applicant at the time of such ceremony, would have been a valid marriage, and such applicant and the insured individual were living in the same household at the time of the death of such insured individual or (if such insured individual is living) at the time such applicant files the application, then ... such purported marriage shall be deemed to be a valid marriage."

The position of Audrey Chlieb is not even remotely comparable to that of Mrs. Rosenberg. Unlike Mrs. Rosenberg, Ms. Chlieb did not go through a marriage ceremony which, had it not been for an unknown legal impediment, would have resulted in a valid marriage. There is no statute stating that the alleged common-law marriage between Ms. and Mr. Chlieb "shall be deemed to be a valid marriage." Ms. Chlieb, also unlike Mrs. Rosenberg, knowingly filed an application for benefits falsely stating that

she had been ceremonially married to Jack Chlieb. No unfairness results from requiring Ms. Chlieb to repay the overpayments she received because of the false application she filed.

The judgment of the district court is *Affirmed*.