OPINION OF THE COURT
Charles J. Hannigan, S.
Petitioner, Michelle DeRose, has filed a petition alleging three causes of action. The first cause of action alleges that the decedent executed a will that left the bulk of the estate to her. The alleged will has not been found; nor has any copy of it been produced. Accordingly, this estate has been opened as an administration proceeding. The decedent’s distributees, the beneficiaries of this estate, are his four siblings and five nieces and nephews who are the issue of a predeceased brother. The petitioner is not a distributee. The second cause of action alleges that the petitioner is the common-law wife of the decedent by virtue of several overnight stays in Pennsylvania, a jurisdiction which, unlike New York, recognizes common-law marriages. The third cause of action seeks to impose a constructive trust upon the decedent’s estate by virtue of an alleged oral promise by the decedent to the petitioner that, “she would be *213 taken care of.” Trial on these issues was held from December 21st through December 28, 1998.
At the commencement of this proceeding the petitioner’s attorney indicated an intention to abandon the cause of action attempting to prove the lost will of the decedent under SCPA 1407. The court directed petitioner’s attorney to proceed on this issue and to present all of the evidence to the court.
Petitioner’s primary witness with respect to the lost will was Nina Swain. Nina Swain acknowledged signing a document which purported to be the decedent’s will at the decedent’s primary residence in 1996, prior to a trip by the decedent and petitioner to Puerto Rico. Ms. Swain stated that the document had been handwritten by the petitioner, and that she and Lee Nigro signed it as witnesses. Ms. Swain did not testify that it was signed by the decedent in her and the other witness’s presence. These are necessary elements to the due execution of a will, and the proof of a lost will. (SCPA 1407 [2].)
Petitioner failed to present any evidence that established that the alleged will had not been revoked by the decedent prior to his death. Petitioner merely asserted that the will was in a place where it was susceptible to tampering and destruction by persons who would be adversely affected by its probate, and that the place where it was purportedly kept was broken into. Petitioner’s evidence failed to rebut the presumption that the will had been revoked. (SCPA 1407 [1].)
The other alleged witness to the will, Lee Nigro, did not provide any testimony with respect to the execution of this document or its provisions. He in fact stated that he never saw a will. The petitioner has therefore failed to meet the requirements of SCPA 1407 (3).
Accordingly, as petitioner has failed to meet the requirements of SCPA 1407, this first cause of action is dismissed and judgment is entered for the respondent.
To establish a common-law marriage in Pennsylvania that will be binding in New York, the requirements of Pennsylvania law must be complied with. The evidence presented establishes the fact that the decedent and the petitioner had their first date in Niagara Falls, New York, in late 1992. The petitioner stated that the decedent spent that night at her apartment and that they continuously resided together thereafter until the decedent’s death. It is well settled under Pennsylvania law ’that, “[wjhere a relationship between a man and a woman is ‘illicit and meretricious’ in its inception, it is presumed to so *214 continue during the cohabitation of the parties. That presumption will be rebutted only if the consent of both the parties to enter into a valid marriage is established by clear and convincing evidence * * * Finally, a claimant who asserts the existence of a marriage bears the burden of proving by clear and convincing evidence that a change in the meretricious status occurred.” (In re Cummings, 330 Pa Super 255, 264, 479 A2d 537, 542.) This is a strict burden of proof which the petitioner must meet as an initial step to establishing a common-law marriage in Pennsylvania.
The testimony of the three most credible and disinterested witnesses, William McDermott — the decedent’s boss, Lee Nigro — the decedent’s close friend, and Gary Rose — the decedent’s co-worker, clearly establishes the fact that the decedent did not believe himself to be married. They testified that the decedent talked about getting married sometime in the future, but that he clearly did not believe himself to be married while he was alive. Lee Nigro’s testimony that the decedent did not plan to get married until his birthday on March 13, 2000, in the new millennium, clearly establishes the fact that the decedent did not believe himself to be married. This testimony corroborated the testimony of the decedent’s siblings, nephew and other rebuttal witnesses that the decedent was not married and relished his nonmarital status. All of this testimony coincides with the Pennsylvania presumption that an illicit and meretricious relationship remains that way.
The petitioner has produced absolutely no credible evidence which rebuts this presumption. The petitioner has not established by any credible evidence that the relationship changed from one of merely “significant others” to a common-law marriage. Further the petitioner has not established any specific date or visit to Pennsylvania where this relationship’s tenor and character changed. The bald fact that the decedent sometimes registered them as husband and wife on overnight stays at motels in Pennsylvania does not rebut the presumption that they were no more than “significant others” involved in an out-of-wedlock relationship.
The petitioner has offered no credible evidence, let alone clear and convincing evidence, that she and the decedent did anything in Pennsylvania to establish a valid marriage within its borders. The only interested witness to travel with them to Pennsylvania, Lee Nigro, clearly indicated that there was nothing special about these trips. All of the activities, documents *215 and statements which the petitioner relies on to establish a Pennsylvania common-law marriage occurred in New York, and New York does not allow a common-law marriage to be established by acts solely within its borders.
The petitioner has also failed to establish that she and the decedent have a general reputation in their community as husband and wife. As set forth earlier, the three most credible witnesses clearly stated they were not holding themselves out as husband and wife. This testimony corroborated that of the decedent’s siblings, nephew and respondent’s other rebuttal witnesses. The majority of the evidence presented by the petitioner came from herself and her three sons. The petitioner also offered the testimony of Nina Swain, a friend of the petitioner. Ms. Swain’s testimony is interesting in that although she indicated the decedent and petitioner held themselves out as husband and wife, when she testified regarding the purported will and its provision, she did not indicate anything in the will which referred to the petitioner as the decedent’s spouse or wife. The bequests were to Michelle. This is even more relevant given the fact that the purported will was in the petitioner’s and not the decedent’s handwriting. Finally the petitioner offered the testimony of the health care workers who assisted the decedent at St. Mary’s Hospital in Lewiston, New York. This testimony is more relevant in that the petitioner admitted that she was the decedent’s fiancee. The health care workers’ testimony regarding the decedent’s statement upon admission has been considered by the court, but has been given limited weight based upon the decedent’s condition of severe stress upon admission.
The documentary evidence supplied to the court is inconclusive in either rebutting the initial presumption the petitioner must overcome or in establishing a general community reputation as husband and wife. In the decedent’s income tax returns he is listed as single and the petitioner and her children are merely listed as dependants. She is not listed as his spouse and they'are not listed as his children. The same is true in his employment records. The fact that the decedent arranged for insurance coverage for the petitioner through his employer does not establish that she was his spouse, she was merely a dependant for whom the employer agreed to provide coverage. The court is not unmindful of the various papers submitted by petitioner; however, the court finds that these are^ insufficient in and of themselves to establish a general reputation in the community as husband and wife given the other contradictory *216 evidence, which the court finds to be more substantial. The petitioner has simply failed to meet the heavy burden of proof placed upon her by Pennsylvania law.
As set forth in footnote 3 in the Cummings decision {supra) cited previously, Pennsylvania courts have long regarded common-law marriage as a fruitful source of fraud and perjury, and thus, the law imposes a heavy burden on one who grounds a claim upon the existence of a common-law marriage. (Estate of Gavula, 490 Pa 535, 417 A2d 168; In re Osterling, 323 Pa 23, 185 A 790.) This is especially true where the lips of one of the parties are sealed by death and the marriage contract is asserted as the basis of a claim to share in the distribution of the decedent’s estate. (In re Manfredi, 399 Pa 285, 159 A2d 697.) In such a case courts will examine the marriage contract with great scrutiny. (Commonwealth ex rel. McDermott v McDermott, 236 Pa Super 541, 345 A2d 914.) Applying that scrutiny to the evidence presented to this court, the petitioner has clearly failed to meet her burden of proof.
Petitioner’s second cause of action alleging a common-law marriage is dismissed and judgment is entered for the respondent.
, [3] The final cause of action before this court is the request to establish a constructive trust on the decedent’s estate based upon an alleged promise by the decedent to the petitioner that he would take care of her. To prove a constructive trust the petitioner must prove four essential elements: (1) a confidential or fiduciary relationship; (2) a promise; (3) a transfer in reliance thereon; and (4) unjust enrichment caused by a breach of the promise. The first element has been established, but the other three have not.
The petitioner’s relationship with the decedent began on the first date with the decedent and continued until his death. The relationship was not entered into on the basis of any promise. The court finds the testimony that the decedent said he would take care of the petitioner or give her the 11 Porter Center Road house to be highly suspect based upon the credibility of the witnesses who made this allegation. The only specific promise the decedent made based upon the testimony of petitioner’s oldest son was to give petitioner the 11 Porter Center Road house. The testimony of Gary Rose as to a speaker phone call he heard between the decedent and the petitioner, where the decedent indicated that the lake property would never be titled in her name, directly refutes these contentions. The petitioner has not provided sufficient evidence to establish this promise or any other promise.
*217 The petitioner and decedent’s relationship was apparently one of mutual love and affection. Acts performed out of natural love and affection do not constitute consideration but are presumed to have been rendered gratuitously. The petitioner has not offered any evidence to refute this presumption and has not shown any transfer in reliance thereon.
Once again, the petitioner immediately commenced living with the decedent after her first date with him. She continued working thereafter and later ceased her employment. The relationship commenced without any promise and there was no further action on the petitioner’s part that she had not gratuitously agreed to undertake before she left her job. As the petitioner testified, she did these things because she loved the decedent.
Finally, there has been no proof that the decedent was unjustly enriched by the petitioner’s activities. The testimony with respect to the lake house which the petitioner helped remodel was that it has gone substantially down in value. The decedent himself made less money from his employer as his relationship with the petitioner seasoned. Absolutely no probative evidence was presented that established any gain to the decedent by virtue of the petitioner’s actions. In fact, the opposite was true based upon his decreasing earnings and the loss of value in his residence. Accordingly, this court does not find any unjust enrichment of the decedent.
As the petitioner has failed to meet the necessary requirements to establish a constructive trust, this cause of action is dismissed and judgment is entered for the respondent.
The court has previously had transferred to it an eviction proceeding brought in Town Justice Court to evict the petitioner from the house she resided in with the decedent at 11 Porter Center Road. This matter has been held in abeyance pending resolution of the issues raised in this proceeding. The petitioner is hereby directed to vacate said premises no later than July 1, 1999. The petitioner shall be responsible for all utilities, upkeep, repair' and maintenance while she retains possession. The court shall retain jurisdiction over this proceeding and any petitions respecting said eviction or the petitioner’s failure to comply with the terms of this eviction.
Finally, the court-appointed guardian ad litem, Joseph Coleman, shall be awarded the sum of $4,375 from this estate for the services he has rendered to his infant ward in this matter.