417 A.2d 168

**ESTATE of John GAVULA.**

**Appeal of Anna ARDOS.**

Supreme Court of Pennsylvania.

Argued April 15, 1980.

Decided July 3, 1980.

Reargument Denied Nov. 24, 1980.

John F. Gibbons, Lehighton, for appellant.

Daniel F. Zeigler, Jim Thorpe, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

John Gavula died testate on November 21, 1975. In his last will, dated May 15, 1963, the deceased directed his just debts, funeral expenses, and testamentary expenses to be paid and left the remainder of his estate to his two sisters.

On March 5, 1976, Anna Ardos, appellant, petitioned the Court of Common Pleas of Carbon County, Orphans' Court Division, for a "spouse's allowance" [1] and a "spouse's exemption." [2] Ardos claims that she is the wife of the deceased by virtue of a common law marriage which purportedly occurred on April 23, 1966.

On June 18, 1976, the trial court appointed a master to determine Ardos' rights as the purported spouse of the deceased. Testimony was taken at three hearings, and the testimony of Ardos was taken subject to a standing objection, by counsel for the estate, based on the Act of May 23, 1887, P.L. 158, § 5(e), 28 P.S. § 322 [hereinafter: Dead Man's Act].[3]

On July 11, 1977, the master filed a report in which he concluded Ardos was incompetent to testify under the Dead

1. Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. §§ 2102(3) and 2507(3) (1975).

2. Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. § 3121 (1975).

3. The Dead Man's Act provides in pertinent part as follows:
 "[Nor], where any party to a thing or contract in action is dead . . . and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, [shall] any surviving or remaining party to such thing or contract, [or] any

Man's Act. The master further concluded that Ardos failed to prove that she was the common law wife of the deceased by a preponderance of the evidence. Accordingly, the master recommended that Ardos' petitions be dismissed with prejudice.

Ardos duly filed exceptions to the master's report, and the trial court ordered the matter returned to the master for appropriate recommendations. In the exceptions, Ardos argued that there was evidence to support a common law marriage and that evidence offered by the estate, regarding the non-existence of the common-law marriage, rendered Ardos competent to testify under the Act of June 11, 1891, P.L. 287, § 1, 28 P.S. § 325 [hereinafter: Act of 1891].[4]

The master again recommended that Ardos' petitions be dismissed. The trial court adopted the recommendation and

other person whose interest shall be adverse to the said right of such deceased . . . party, shall be a competent witness to any matter occurring before the death of said party . . . unless the issue or inquiry be devisavit vel non, or be any other issue or inquiry respecting the property of a deceased owner, and the controversy be between parties respectively claiming such property be devolution on the death of such owner, in which case all persons shall be fully competent witnesses."
The Dead Man's Act has been substantially reenacted at 42 Pa.C.S.A. § 5930 (Supp.1979).

4. The act of 1891 provides in pertinent part as follows:
"Hereafter in any civil action or proceeding . . . although a party to the thing or contract in action may be dead . . . and his right thereto or therein may have passed . . . to a party on record who presents [sic] his interest in the subject in controversy, nevertheless any surviving or remaining party to such thing or contract or any other person whose interest is adverse to the said right of such deceased . . . party, shall be a competent witness to any relevant matter although it may have occurred before the death of said party . . . if and only if such relevant matter occurred between himself and another person who may be living at the time of the trial and may be competent to testify, and who does so testify upon the trial against such surviving or remaining party or against the person whose interest may be thus adverse, or if such relevant matter occurred in the presence or hearing of such other living or competent person."
The Act of 1891 has been substantially reenacted at 42 Pa.C.S.A. § 5933(a) (Supp. 1979).

on January 5, 1978, entered a decree dismissing Ardos' petitions with prejudice. This appeal followed.

■ Ardos claims initially that the trial court erred in ruling her testimony, about events prior to the deceased's demise, incompetent under the Dead Man's Act. Ardos argues that the "devisavit vel non" exception, expressed in the Dead Man's Act,[5] is applicable and that, therefore, she is competent.

We will not address this claim because it was not raised at trial or in the exceptions to the master's report, and, therefore, it is not preserved for appellate review. *Bell v. Koppers Co.*, 481 Pa. 454, 392 A.2d 1380 (1978); *Commonwealth v. National Federation of the Blind*, 471 Pa. 529, 370 A.2d 732 (1977); *Keystone Building Corp. v. Lincoln Savings & Loan Association*, 468 Pa. 85, 360 A.2d 191 (1976).

■ Ardos next argues that her testimony was not incompetent under the Dead Man's Act because the estate called two witnesses who testified "to facts and circumstances purporting to indicate appellant [Ardos] and decedent were not married." Accordingly, Ardos maintains this rendered her testimony competent under the Act of 1891. We disagree.

Under the Act of 1891, a surviving party is competent to testify to matters which occurred prior to the death of the deceased only if:

"the party representing the decedent calls a witness who testifies adversely to the interests of the surviving party about a transaction which occurred *in the presence of the survivor and the witness* . . . ." [Emphasis supplied.]

*Gelb Estate*, 425 Pa. 117, 122, 228 A.2d 367, 370 (1967). See also, *Bowman's Estate*, 301 Pa. 337, 152 A. 38 (1930); *Krumrine v. Grenoble*, 165 Pa. 98, 30 A. 824 (1895).

Instantly, the testimony of the two witnesses for the estate, about matters which occurred prior to the deceased's demise, was adverse to Ardos in that the testimony related

5. See n. 3 *ante.*

statements by the deceased that he and Ardos were not married. These statements, however, were not made "in the presence of the survivor [Ardos] and the witness." Accordingly, the Act of 1891 is of no avail to Ardos.

Finally, Ardos claims she met her burden of proving the purported common law marriage between herself and the deceased. Ardos argues that her testimony and that of her witnesses is "sufficient, in law, to establish the existence of a common law marriage. . . ." Since Ardos' testimony about events prior to the deceased's demise is incompetent under the Dead Man's Act, we will only consider the testimony of Ardos' other witnesses and her rebuttal testimony about events after the deceased's demise in determining the sufficiency argument.[6]

 Under the law of this Commonwealth, marriage is a civil contract. The contract does not require any specific form of words, and all that is essential is proof of an agreement to enter into the legal relationship of marriage at the present time. *In re Estate of Garges*, 474 Pa. 237, 378 A.2d 307 (1977).[7]

 The burden to prove the marriage is on the purported spouse. *Davis's Estate*, 204 Pa. 602, 54 A. 475 (1903). Moreover, since our courts have regarded common law marriage as a fruitful source of perjury and fraud to be tolerated and not encouraged, see *Manfredi Estate*, supra; *Wagner Estate*, 398 Pa. 531, 159 A.2d 495 (1960); *Baker v. Mitchell*, 143 Pa.Super. 50, 17 A.2d 738 (1941), the law imposes a heavy burden on one who grounds his or her claim on an allegation of common law marriage. This is especially so

6. The testimony of Ardos' witnesses was not and is not now challenged under the Dead Man's Act or any other basis.

7. Because it is often difficult to prove a common law marriage, the law has created a rebuttable presumption of marriage where two absolutely essential elements co-exist, namely, constant cohabitation and general, as distinguished from partial or divided, reputation of marriage. *Manfredi Estate*, 399 Pa. 285, 159 A.2d 697 (1960). Instantly, the record does not reveal any evidence of constant cohabitation and general reputation; accordingly, no such presumption of common law marriage has been established.

where one of the parties is dead and the claim, so grounded, is to share in the distribution of the estate. *Manfredi Estate*, supra; *Baker v. Mitchell*, supra. As this Court stated in *Stevenson's Estate*, 272 Pa. 291, 301, 116 A. 162, 165 (1922):

"when the lips of a man are sealed by death, and he leaves no satisfactory evidence as to the existence of such contract, courts will be very slow to establish it in derogation of the undoubted rights of those who follow him."

Accord, *Osterling's Estate*, 323 Pa. 23, 185 A. 790 (1936); *McGrath's Estate*, 319 Pa. 309, 179 A. 599 (1935). Finally, when an attempt is made to establish a marriage without the usual formalities, we are called upon to examine the purported marriage contract with great scrutiny. *Manfredi['s] Estate*, supra; *McGrath's Estate*, supra; *Baker v. Mitchell*, supra.

■ Instantly, the record reveals the following: Ardos called four witnesses to support the existence of the common law marriage. Thomas Zizic, the son-in-law of Ardos, testified that when he first met the deceased, the deceased stated he and Ardos "have been married for a little over 3 years and we exchanged our vows and have a common law marriage . . .." The substance of the "vows" was not revealed. The deceased's statement was made when Ardos and the deceased went to Maryland to help Zizic and his wife, Ardos' daughter, move into a rented house in 1969. Zizic also testified the deceased referred to Ardos as "Mrs. Gavula" during Christmas of 1969 when Ardos, the deceased, and Zizic's parents visited Zizic and his wife. Zizic could not recall any occasion after 1969 where the deceased referred to Ardos as his wife. Zizic's testimony was substantially corroborated by his wife. Mrs. Zizic did not reveal the substance of the "vows."

Zizic's parents, Lubo and Dorothy Ciric, were the other witnesses called by Ardos. They stated they first met the deceased when the deceased and Ardos traveled to Maryland to visit the Zizics during Christmas of 1969. Mrs. Ciric testified that, at that time, the deceased said: "we had

gotten married in April of 1966; it's a common law marriage; but we went through the vows ourselves and we are married." The substance of the "vows" was not revealed. Mrs. Ciric also corroborated Zizic's testimony that the deceased referred to Ardos as "Mrs. Gavula." Mr. Ciric substantially corroborated the testimony of Mrs. Ciric.

The estate called several witnesses who testified to the non-existence of the common law marriage. Al Svercheck testified that he had a conversation with the deceased one week before the latter died. Svercheck testified he asked the deceased: "John, when are you going to get married?" The deceased replied: "Why should I; everybody's out to see what they could get, not what they could give."

John Cipko, the executor, testified that, several days after the deceased died, Ardos stated she and the deceased planned to marry after stock owned by the deceased split. This testimony was corroborated by John Paulik, the deceased's nephew, who was also present when Ardos made the above statement. Paulik also testified that when the deceased and Ardos visited the home of Paulik's mother, Paulik was under the impression that Ardos was the deceased's "girlfriend."

Julia Korin, the deceased's first cousin, testified that, prior to the deceased's demise, a woman stated to Korin: "oh, I hear your cousin John is getting married . . ." and that, in a conversation with the deceased, Korin stated: "I heard that you're getting married; you have a girlfriend." The deceased replied: "Don't believe in any gossip you hear."

Finally, Mary Lunz, the deceased's sister, testified that she asked the deceased: "do you plan to marry Ann . ." and the deceased replied: "no—never . . . you know my condition; that I can't ever marry." This conversation occurred in August 1975. Lunz also testified that on several occasions the deceased said Ardos was only a friend that he liked to occasionally visit and "take on drives when he went shopping . . ."; that Lunz and the deceased planned to

live together in Connecticut after Lunz retired; that Lunz and the deceased planned to "share" several insurance policies and to hold several bank accounts as joint owners; and that after the deceased's demise, Ardos showed Lunz an engagement ring and stated she was "engaged."

In rebuttal, Ardos denied stating that she and the deceased would marry after the above-mentioned stock split. Ardos also denied making the statement that she was engaged.

Other competent testimony in the record reveals that the deceased owned and lived alone in his apartment and that he filed federal income tax returns as a "single" person claiming only one exemption.

The only competent record evidence that Ardos and the deceased entered into a present agreement intending to thereby establish the relationship of husband and wife is the evidence of the deceased's admissions of marriage to Ardos and other evidence concerning the deceased's reference to Ardos as "Mrs. Gavula." These admissions and references were made only to a few people who were closely associated with Ardos through her daughter. Moreover, these admissions and references were contradicted by competent evidence elicited on behalf of the estate and are inconsistent with the deceased's maintenance of a separate residence and his federal income tax filing status. We are not persuaded that the trial court erred in ruling that the evidence of admissions and references disclosed herein failed to satisfy Ardos' burden of proving the existence of a common law marriage. See Levy's Estate, 307 Pa. 522, 161 A. 740 (1932) (deceased's admissions to a few individuals that purported widow was his wife is not sufficient to prove common law marriage).

Decree affirmed. Each party to pay own costs.

ROBERTS, J., concurs in the result.