504 Pa. 626 (1984)
476 A.2d 354
In re ESTATE OF Warren STAUFFER, Deceased.
Bebeann O'HALLORAN, Appellee,
v.
Joseph T. STAUFFER, Administrator C.T.A., Appellant.
Supreme Court of Pennsylvania.
Argued March 5, 1984.
Decided May 25, 1984.
*627 *628 Donald H. Melaney, Pittsburgh, for appellant.
Edward C. Milburn, Pittsburgh, for appellee.
Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION
ZAPPALA, Justice.
In this appeal, we are called upon to determine whether a woman who claims a spouse's elective share against the will of a decedent may testify under any exception to the Dead Man's Act, Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S. § 5930, in order to establish her status as a common law spouse. The trial court held that under our decision in In re Estate of McClain, 481 Pa. 435, 392 A.2d 1371 (1978), the *629 Appellee could in fact testify under the devisavit vel non exception to the Dead Man's Act.[1] The Superior Court affirmed the trial court. We reverse on the basis that McClain is not applicable on the instant facts.
The pertinent facts are as follows. The decedent, Warren Stauffer, died on December 8, 1979, leaving a will devising his entire estate to his brother. The Appellee, Bebeann O'Halloran, at first filed a challenge to the will claiming that it was a forgery and/or that the decedent was incompetent at the time he made the will. Subsequent to that, Appellee filed an election to take against the will on the basis that she was the wife of the decedent by way of a common law marriage. A trial was held on July 2, 1980 before the Honorable William S. Rahauser of the Court of Common Pleas of Allegheny County at which time the sole issue tried was whether or not Bebeann O'Halloran was the common law wife of the decedent.[2] At trial, counsel for the estate objected to any testimony of Appellee as would relate to any conversation she had with the deceased prior to his death on the basis of the Dead Man's Act. The trial judge, basing his decision upon a reading of McClain, concluded that the Appellee was competent to testify.
While the general policy in this Commonwealth is to accept common law marriage, we have stated that the same is to be tolerated and not encouraged. Wagner's Estate, 398 Pa. 531, 159 A.2d 495 (1960). We have also said that *630 common law marriage is a fruitful source of perjury and fraud, Id., 398 Pa. at 533, 159 A.2d at 497. This being so,
. . . the law imposes a heavy burden on one who grounds his or her claim on an allegation of common law marriage. This is especially so where one of the parties is dead and the claim, so grounded, is to share in the distribution of the estate. [Citations omitted.] As this Court stated in Stevenson's Estate, 272 Pa. 291, 301, 116 A. 162, 165 (1922):
`when the lips of a man are sealed by death, and he leaves no satisfactory evidence as to the existence of such contract, courts will be very slow to establish it in derogation of the undoubted rights of those who follow him.'
Accord, Osterling's Estate, 323 Pa. 23, 185 A. 790 (1936); McGrath's Estate, 319 Pa. 309, 179 A. 599 (1935). Finally, when an attempt is made to establish a marriage without the usual formalities, we are called upon to examine the purported marriage contract with great scrutiny. [Citations omitted.]
Estate of Gavula, 490 Pa. 535, 540-541, 417 A.2d 168, 171 (1980).
The purpose of the Dead Man's Act is "to prevent the injustice which might flow from permitting the surviving party to a transaction with a decedent to give testimony thereon favorable to himself and adverse to the decedent, which the latter's representative would be in no position to refute," Estate of Kofsky, 487 Pa. 473, 476, 409 A.2d 1358, 1359 (1979), citing Weaver v. Welsh, 325 Pa. 571, 191 A. 3 (1937). It is in the light of these two policies that we must examine the desirability of allowing Appellee to be excepted from the Act's proscriptions.
Appellee argues, and both courts below held, that she was competent to testify based upon the devisavit vel non exception to the Dead Man's Act. The purpose of this exception is to allow testimony as to the intent of a testator to be elicited from those who would otherwise be incompetent to testify under the Act. In Dalbey's Estate, 326 Pa. *631 285, 192 A. 129 (1937), we stated that the exception arises out of the usual lack of qualified testimony in litigation involving a will, the logic being that the usual beneficiaries or legatees who would be incompetent under the Act are usually the only ones who have knowledge of the circumstances surrounding the execution of the testator's will and the contents thereof. Id. In these instances we balance the need for this testimony against its possible self-serving facet and allow the testimony to be heard, leaving the factfinder to determine credibility and weight.
McClain, the plurality opinion relied on by both courts below, was an attempt at overruling prior case law holding that the devisavit vel non exception was operable only when the interested parties were all of the same class, either all taking by devise or all taking by descent. McClain held that the exception was operable even where some of the parties involved were claiming by devise and some by descent. Based upon this, the lower court reasoned that Appellee, claiming by descent, could testify even though the other beneficiary was taking by devise. This arguably would be a reasonable application of McClain were it not for the fact that Appellee must first establish her status as a descendant before she can qualify to testify under the exception. In this respect it can be said that Appellee is sui generis from those situations covered under the exception, the reason being that in the instant case the testimony of the Appellee does not go directly to questions surrounding the will or the decedent's intent thereof, but rather is an attempt to establish the common law marriage. It is therefore apparent that the purpose behind which we except this class and allow them to testify is not present here. For, upon closer examination, what the Appellee must do before she comes within the purview of the exception is to overcome the hurdle of establishing her status. Once she has done that, she would fall within the exception and be competent to testify. Appellee's attempt at overcoming that hurdle, however, must be accomplished without resort to any exception to the Act, since at that point she is *632 not yet within the exception. Additionally, we have held that a common law marriage is a civil contract, McGrath's Estate, 319 Pa. 309, 179 A. 599 (1935), and therefore what the Appellee would really be testifying to is a contractual relationship between herself and the decedent. This is clearly proscribed under the Dead Man's Act, and we have so held, albeit without setting forth the rationale at length. Wagner Estate, 398 Pa. 531, 536, 538, 159 A.2d 495, 498 (1960).[3]
OUr decision today does not preclude Appellee from establishing her status as common law wife, but merely restricts the evidence she may introduce. For, consistent with proof of a civil contract, the contract does not require any specific form of words; all that is essential is proof of an agreement to enter into the legal relationship of marriage at the present time. Gavula, supra, 490 Pa. at 540, 417 A.2d at 171. Where there is no such proof available, the law permits a finding of marriage based upon reputation and cohabitation when established by satisfactory proof. Wagner's Estate, 368 Pa. 531, 159 A.2d 495 (1960); Nikitka's Estate, 346 Pa. 63, 29 A.2d 521 (1943). In Estate of Garges, 474 Pa. 237, 378 A.2d 307 (1977), we held that the cohabitation of a man and woman, both of whom are capable of contracting marriage coupled with a reputation as husband and wife in their community, together raise a presumption that the parties have contracted marriage.
In the instant case, the record indicates that the Appellee at the time of trial offered evidence of cohabitation and reputation in the community, and thus our decision today does not extinguish her sole means of proving her status as decedent's spouse.
*633 Accordingly, we remand this case to the lower court for a new trial, consistent with this opinion, on the issue of the existence of a common law marriage.
Reversed and remanded. 315 Pa.Super. 591, 462 A.2d 750.
NIX, C.J., and FLAHERTY and McDERMOTT, JJ., join in this opinion.
NIX, C.J., filed a concurring opinion in which FLAHERTY and McDERMOTT, JJ., joined.
LARSEN, J., filed a dissenting opinion in which HUTCHINSON and PAPADAKOS, JJ., joined.
NIX, Chief Justice, concurring.
The distinction made by the majority between appellee's obligation to prove a relationship with the decedent and the legal rights that will flow in the event that relationship is established is a legitimate one. Appellee's assertion of a common law marital relationship is in essence an attempt to establish that a contract existed between the decedent and her during the decedent's lifetime. That is the traditional situation where the testimony of the surviving party has been deemed inadmissible under the Dead Man's Statute. 42 Pa.C.S. § 5930. Once that relationship is established by evidence other than her testimony, the assertion of her legal rights flowing from that relationship as against others who claim interest in the estate represents a controversy between parties respectively claiming such property by devolution or otherwise. I therefore join the majority opinion.
FLAHERTY and McDERMOTT, JJ., join in this concurring opinion.
LARSEN, Justice, dissenting.
I dissent; the appellee's testimony at trial concerning her status as decedent's common law spouse was properly admitted by the trial court under the devisavit vel non exception to the Dead Man's Act, Act of July 9, 1976, P.L. *634 586 No. 142, 42 Pa.C.S.A. § 5930. The majority's holding to the contrary, that appellee "must first establish her status as a descendant before she can qualify to testify under the exception," is inconsistent with the plain language of that statute and the prior decisions of this Court. McGrath's Estate, 319 Pa. 309, 179 A. 599 (1935); In Re Estate of McClain, 481 Pa. 435, 392 A.2d 1371 (1978).
The Dead Man's Act provides in part:
Except as otherwise provided in this subchapter, in any civil action or proceeding, where any party to a thing or contract in action is dead, . . . and his right thereto or therein has passed, either by his own act or by the act of law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased . . . party, shall be a competent witness to any matter occurring before the death of said party . . . unless the issue or inquiry be devisavit vel non, or be any other issue or inquiry respecting the property of a deceased owner, and the controversy is between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses.

42 Pa.C.S.A. § 5930.
"Devolution" is "the transfer of the decedent's estate both by operation of law and by will." In Re Estate of McClain, supra, 481 Pa. at 445, 392 A.2d at 1375. In the instant case, appellee claims a portion of decedent's estate by operation of law (the right of a surviving spouse under the Probate, Estates and Fiduciaries Code to elect to receive a share of the estate against any will  20 Pa. C.S.A. § 2508) while appellant claims decedent's property by will. Clearly, therefore, this case presents a "controversy . . . between parties respectively claiming such property by devolution on the death of such [property] owner. . . ." Hence, "all persons [are] fully competent witnesses."
*635 Nevertheless, the majority ignores the clear and unambiguous language and application of the Act in the situation presented herein based upon its analysis of "two policies that we must examine [to determine] the desirability of allowing appellee to be excepted from the Act's proscriptions." The issue in this case  and in any case of statutory construction  is not our views as to the "desirability of allowing" a certain application of an Act, but rather, whether the legislature has required that application. It is a fundamental precept of statutory construction that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1921(a).
The majority attempts to distinguish Estate of McClain, reasoning that "Appellee is sui generis from those situations covered under the exception, the reason being that in the instant case the testimony of the appellee does not go directly to questions surrounding the will or the decedent's intent thereof, but rather is an attempt to establish the common law marriage." At 357. In so reasoning, the majority reads Estate of McClain far too restrictively and resurrects the error that we corrected in that case. As we made clear therein, the devisavit vel non[1] exception is "not limited to `issues as affect the beneficiary under an alleged will.' We have recognized the applicability of the exception to cases where all parties claim by intestacy," as well as cases where some parties claim by will and other parties claim by operation of law. 481 Pa. at 443-45, 392 A.2d at 1374-75. It is of no legal significance that appellee's testimony does not "go directly to questions surrounding the will or the decedent's intent thereof," for the appellee's claim is predicated upon the operation of law, namely the Pennsylvania Probate, Estates and Fiduciaries Code which permits a spouse to elect to take a portion of a *636 decedent's estate against a will. 20 Pa.C.S.A. § 2508. Since the sole issue regarding appellee's claim to decedent's property by operation of law concerns her status as a common law wife, the majority requires her to prevail on the merits of her claim before allowing her to testify. This is in direct conflict with the reasoning and holding in Estate of McClain wherein appellants' claim was premised solely on their status as descendants (grandnieces). This Court held that testimony by the descendants was admissible to demonstrate that status. If a grandniece may testify under the devisavit vel non exception regarding her status as grandniece, there is no perceptible basis, under the Dead Man's Act, for refusing to allow a spouse, common law or otherwise, to testify regarding her status as spouse.[2]
The majority mistakenly relies upon Wagner's Estate, 398 Pa. 536, 538, 159 A.2d 495, 498 (1960), to support the proposition that an alleged common law spouse may not testify about the contractual relationship between herself and the decedent in a proceeding for the spouse's elective share. In Wagner's Estate, the alleged common law spouse of the decedent did not testify and the issue of allowing her to testify was not raised. The statement in that case, "[T]he claimant's lips are sealed by the Dead Man's Act," id., was obviously dicta and is not supported by a careful examination of the Act nor by precedent.[3] In McGrath's Estate, supra, the alleged common law spouse did, in fact, testify that the decedent had exchanged marital vows with her. This Court held that the spouse's testimony alone was sufficient to establish the existence of a common law marriage *637 and, further, stated "nor is there any doubt of the competency of a surviving spouse to testify where, as here, the claim is to take by devolution." McGrath's Estate, supra 319 Pa. at 315, 179 A. at 602.
The appellant also challenges the sufficiency of the evidence to support the trial court's finding that the appellee and decedent had entered into a common law marriage. While the evidence may not have been overwhelming, nevertheless there was sufficient evidence presented at trial to permit the lower court to find the existence of a marriage. A number of witnesses testified that the appellee and the decedent held themselves out to the community as husband and wife and that they were reputed to be husband and wife. It is also undisputed that the appellee and decedent had cohabitated for at least a portion of the time they were reputed to be married and that they had a child. Although, cohabitation and reputation are not a marriage, they are circumstances that raise a rebuttable presumption of marriage. Pierce v. Pierce, 355 Pa. 175, 179, 49 A.2d 346, 348 (1946). In addition, the appellee's testimony that she and the decedent had entered into a marriage contract is sufficient, by itself, to sustain a finding by the lower court that a common law marriage had been formed. McGrath's Estate, supra 319 Pa. at 315, 179 A.2d at 602.[4]
In conclusion, I believe that the testimony of the appellee was properly admitted at trial and that the evidence presented at trial was sufficient to support the trial court's finding that the appellee was married to the decedent at the time of his death. I would, therefore, affirm the decision of the Superior Court.
HUTCHINSON and PAPADAKOS, JJ., join in this Dissenting Opinion.
NOTES
[1] Briefly stated, the Act renders incompetent testimony in a civil action by a witness to occurrences prior to the death of a party whose interest is adverse to that of the witness "unless the issue or inquiry be devisavit vel non, or be any other issue or inquiry respecting the property of a deceased owner, and the controversy is between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses." 42 Pa.C.S. § 5930.
[2] It is unclear from the record as to what became of the challenge to the validity of the will itself. It appears that the Appellee had waived any challenge to the same and chose to proceed on the basis of her election to take under the will, therefore requiring her proof as a common law wife.
[3] We note for informational purposes that a subsequent change to § 2209 of the Decedents, Estates and Fiduciaries Code, as amended, Act of February 18, 1982, P.L. 45 No. 26 § 1, will prospectively render this issue moot since § 2209 now provides that ". . . a person who is or claims to be the surviving spouse should be a competent witness as to all matters pertinent to his rights under this chapter other than the creation of his status as surviving spouse." (Emphasis added).
[1] Perhaps it would be more accurate to refer to the operative proviso of the Act in the instant case as the "devolution" exception rather than the devisavit vel non ("will or no will") exception. However, the cases have generally used the devisavit vel non terminology for both situations.
[2] In the future, claims by spouses to a decedant's property will be governed by section 2209 of the Probate, Estates and Fiduciaries Code, amended subsequent to the trial of this case. Act of February 18, 1982, P.L. 45, No. 26 § 1. The Act now provides that "A person who is or claims to be the surviving spouse should be a competent witness as to all matters pertinent to his rights under this chapter other than the creation of his status as surviving spouse."
[3] The majority has also extensively relied upon Estate of Gavula, 490 Pa. 535, 417 A.2d 168 (1980). In that case, however, this Court expressly declined to decide the issue of the applicability of the devisavit vel non exception in a case similar to the present one. Id., 490 Pa. at 539, 417 A.2d at 170.
[4] The appellee testified that the decedent asked: "Will you be my wife?" and that she replied: "I sure will." This exchange could reasonably be construed as the offer and acceptance of a marriage contract per verba de praesenti. Such a contract creates a marriage. Pierce v. Pierce, supra. This Court has also ruled that a contract per verba de futuro followed by consumation creates a valid marriage. Richard v. Brehm, 73 Pa. 140, 144 (1873).