527 A.2d 1058

**In re ESTATE OF Frank M. CORACE, Deceased.**

**Appeal of Mary K. GRAESER also known as Mary Corace.**

Superior Court of Pennsylvania.

Argued April 28, 1987.

Decided June 22, 1987.

270

Ralph C. Christensen, Washington, for appellant.

Bruce E. Dice, Oakmont, for appellee.

Before CIRILLO, President Judge, and MONTEMURO and TAMILIA, JJ.

CIRILLO, President Judge:

This is an appeal from the grant of a petition to vacate the appellant's election against the decedent's will. We affirm.

Two issues are presented for our review: (1) whether the appellant was competent to testify[1] about the creation of her status as a surviving spouse; and (2) whether the appellant had established a common law marriage with the decedent before his death.

The trial court found that in September 1977, the decedent, Frank Corace, hired then 17 year-old appellant/claimant, Mary Graeser, to work in his business. The decedent had met the claimant approximately one year earlier when he was about 65 years of age. Later in 1977, decedent purchased a late model luxury car for claimant. In the spring of 1978, Eleanor Corace, whom decedent was married to at the time, committed suicide. In June 1979, claimant moved into the decedent's home.

In November 1980, decedent prepared his last will and testament designating his three grandchildren as sole beneficiaries. Two of these grandchildren were named as executors. Decedent and claimant continued to reside together, with the exception of one short interval, from June 1979 until decedent's death in March 1985. In September 1985, claimant filed a notice of election against the decedent's will based on her assertion that she was the decedent's widow. In response, the executors of the decedent's estate filed a petition to vacate the election. Claimant appeals the trial court's grant of the petition to vacate her election. The trial court found that claimant did not establish that she was the common law wife of the decedent.

## I

■ We first discuss the claimant's competency to testify about her alleged common law marriage with the decedent. Section 2209 of Title 20 provides that "[a] person who is or claims to be the surviving spouse shall be a competent witness as to all matters pertinent to his rights under this chapter [relating to the elective share of a surviving spouse]

---

1. 20 Pa. C.S. § 2209 addresses the competency of a surviving spouse to testify regarding marital status. This statute is discussed in Part I of our opinion.

*other than the creation of his status as a surviving spouse.*" 20 Pa. C.S. § 2209 (emphasis added). That is, a person who seeks to obtain an elective share of the estate of a deceased spouse is statutorily prohibited from testifying about the creation of one's status as a surviving spouse. This statute applies to this case because the central issue here is whether the claimant seeking an elective share of the decedent's estate has established her alleged status as a surviving spouse pursuant to an alleged common law marriage.

The Pennsylvania Supreme Court in the case of *In re Estate of Stauffer*, 504 Pa. 626, 476 A.2d 354 (1984), considered this same issue. *Stauffer*, however, was based on the law as it existed before the enactment of the present version of § 2209. *Stauffer* is nonetheless illustrative for the purpose of analyzing the theory behind § 2209.

In *Stauffer*, as here, the claimant filed an election to take against the will of the decedent on the basis that she was the wife of the decedent pursuant to a common law marriage. At trial, counsel for the decedent's estate objected to the claimant's testimony, due to the Dead Man's Act. The Supreme Court agreed and stated that the purpose of the Dead Man's Act, 42 Pa. C.S. § 5930, is " 'to prevent the injustice that might flow from permitting the surviving party to a transaction with a decedent, which the latter's representative would be in no position to refute.' " 504 Pa. at 630, 476 A.2d at 356 (quoting *Estate of Kofsky*, 487 Pa. 473, 476, 409 A.2d 1358, 1359 (1979)) (citation omitted). The claimant in *Stauffer* argued that she was competent to testify based on an exception to the Dead Man's Act which permits those who would otherwise be incompetent to testify under the Act, to proffer testimony regarding the intent of the testator.

Our Supreme Court rejected this argument and ruled that before the claimant could come within the exception to the limitations imposed by the Act, she had to overcome the hurdle of establishing her status as a common law wife. *Id.* 504 Pa. at 631, 476 A.2d at 357. The *Stauffer* Court

reasoned, moreover, that the claimant's attempt to overcome that hurdle must be accomplished without resort to any exception to the Act because at that time the claimant is not yet within the scope of the Act. *Id.*, 504 Pa. at 631–32, 476 A.2d at 357. The Court added that a common law marriage is a civil contract, and permitting testimony by the claimant regarding that contractual relationship between herself and the decedent would clearly be proscribed by the Dead Man's Act.

The *Stauffer* Court held that the claimant was not completely precluded from establishing her status as a common law wife, but, rather, was barred from using her own testimony as supportive evidence for that position. *Id.*, 504 Pa. at 632, 476 A.2d at 357 (citing *Wagner Estate* 398 Pa. 531, 536, 159 A.2d 495, 498 (1960)).

Section 2209 can be said to have codified the principles enunciated in *Stauffer*. Indeed, the Court noted that the current version of § 2209 would have rendered moot the issues considered in *Stauffer*.[2] *Id.* 504 Pa. at 632 n. 3. Nevertheless, our discussion of *Stauffer* increases the perspicuity and buttresses the validity of our conclusion that § 2209 applies to the case before us and precludes the claimant from using her own testimony to establish the creation of her status as a surviving common law spouse of the decedent. Thus, the trial court correctly excluded such testimony by the claimant.

As our Supreme Court recognized in *Stauffer*, however, this conclusion does not prohibit the claimant from attempting to establish her marital relationship with the decedent based on other evidence. This leads us to the last issue in this case.

**2.** The official comment to § 2209 indicates that the current version of the statute is the result of an amendment which was enacted in response to case law which suggested that the prior version of the statute could have been interpreted to allow a person asserting the status of a surviving common law spouse to testify concerning statements of the decedent which would establish an alleged marriage.

## II

The claimant argues that she established a common law marriage with the decedent before his death. We disagree.

The Pennsylvania Supreme Court has recognized that while this Commonwealth tolerates common law marriage, the same is not encouraged. *Stauffer*, 504 Pa. at 629, 476 A.2d at 356. *See Steadman v. Turner*, 357 Pa.Super. 361, 362, 516 A.2d 21, 22 (1986). Furthermore, *Stauffer* observed that because common law marriage is a fruitful source of perjury and fraud, " 'the law imposes a heavy burden on one who grounds his or her claim on an allegation of common law marriage. This is especially so where one of the parties is dead and the claim, so grounded, is to share in the distribution of the estate.' " *Stauffer*, 504 Pa. at 630, 476 A.2d at 356 (quoting *Estate of Gavula*, 490 Pa. 535, 540–41, 417 A.2d 168, 171 (1980)).

As with other civil contracts, all that is necessary to establish the existence of a common law marriage is "proof of an agreement to enter into the legal relationship of marriage at the present time." 504 Pa. at 632, 476 A.2d at 356 (citing *Gavula*, 490 Pa. at 540, 417 A.2d at 171). An inference of marriage may be drawn from the circumstantial evidence of constant cohabitation and a general reputation of marriage. *In re Estate of Kovalchick*, 345 Pa.Super. 229, 233–34, 498 A.2d 374, 376–77 (1985) (citing *Gavula*, 490 Pa. at 540 n. 7, 417 A.2d at 171 n. 7). This inference fails, however, upon proof that no marriage existed. *Kovalchick*, 345 Pa.Super. at 235, 498 A.2d at 377 (citing *Pierce v. Pierce*, 355 Pa. 175, 179, 49 A.2d 346, 348 (1946); *In re Cummings Estate*, 330 Pa.Super. 255, 263, 479 A.2d 537, 542 (1984)).

The applicable appellate standard of review does not permit us to reverse the trial court's finding that there was no common law marriage, unless we detect an abuse of discretion or an error of law. *Kovalchick*, 345 Pa.Super. at 233, 498 A.2d at 376 (citing *Cummings*, 330 Pa.Super at 261, 479 A.2d at 541). *See Steadman v. Turner*, 357

Pa.Super. 361, 362, 516 A.2d 21, 22 (1986). We find no abuse of discretion and no error of law in the trial court's finding that the claimant did not intend to form a common law marriage with the decedent prior to his death, and that there was insufficient evidence to establish that claimant and decedent had a general reputation within the community as a married couple.

The record indicates that the decedent did not place his property in joint title with the claimant even though several substantial purchases were made after their cohabitation had commenced. Nor did they file joint tax returns. A final representative incident that supports the trial court's finding is that the claimant did not describe herself as the decedent's wife when she brought the decedent to the hospital immediately before his death. Rather, a relative of the decedent had to be called to sign certain hospital documents. The claimant did not hold herself out as the decedent's wife immediately prior to his death. Therefore, she should not expect to be categorized as his wife, after his death.

Affirmed.