**Charles Sims AFRICA,**

v.

**Donald VAUGHAN, Superintendent OF S.C.I. Graterford; Martin Horn, Commissioner, Pa. Dept. of Corrections.**

**Civil Action No. 96–649.**

United States District Court,
E.D. Pennsylvania.

March 19, 1998.

---

Charles Sims Africa, Graterford, PA, pro se.

Claudia M. Tesoro, Laurie R. Jubelirer, Philadelphia, PA, for Defendants.

## MEMORANDUM

WALDMAN, District Judge.

Presently before the court is defendants' renewed Motion for Summary Judgment in this *pro se* 42 U.S.C. § 1983 action. Plaintiff, an inmate at S.C.I. Graterford, seeks to enjoin defendants from denying him visitation with Ramona Africa.[1] Plaintiff asserts that Ms. Africa is his wife and other inmates receive visits from their spouses including those, who like Ms. Africa, are former inmates. He claims the refusal to permit such visitation is thus an equal protection violation.

The court previously rejected a dispositive defense motion premised on evidence of the reasons defendant Vaughan determined Ms. Africa's presence posed an institutional threat. The court concluded that if plaintiff and Ms. Africa are married, defendants had not demonstrated a rational basis for refusing them the visitation privileges accorded to other prisoners married to former inmates but if they are not married, then plaintiff has been treated no differently than other inmates generally precluded from receiving

visits from former inmates. Additional discovery was then undertaken with regard to whether plaintiff is in fact married to Ms. Africa.

■ To obtain an injunction, a plaintiff must show that he is entitled to relief on the merits, that there is no adequate alternative remedy at law and that the balance of equities favors the grant of injunctive relief. *Ciba–Geigy Corp. v. Bolar Pharmaceutical Co.,* 747 F.2d 844, 850 (3d Cir.1984), *cert. denied,* 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985). The ongoing denial of a plaintiff's constitutional rights warrants injunctive relief.

■ Neither convicted prisoners nor their family members have an inherent constitutional right to visitation. *See, e.g., Maust v. Headley,* 959 F.2d 644, 649 (7th Cir.1992); *Mayo v. Lane,* 867 F.2d 374, 379 (7th Cir.1989) (Flaum, J. concurring); *Thorne v. Jones,* 765 F.2d 1270, 1273–74 (5th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 313 (1986); *McCray v. Sullivan,* 509 F.2d 1332, 1334 (5th Cir.), *cert. denied,* 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975); *Flanagan v. Shively,* 783 F.Supp. 922, 934 (M.D.Pa.), *aff'd,* 980 F.2d 722 (3d Cir.1992), *cert. denied,* 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993). The equal protection clause, however, requires that the state treat similarly situated individuals alike absent a rational reason for doing otherwise. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). There must be a rational basis for distinctions by prison officials in the application of visitation policies to similarly situated inmates. *See Robinson v. Palmer,* 841 F.2d 1151, 1157 (D.C.Cir.1988); *Smith v. Coughlin,* 748 F.2d 783, 787–88 (2d Cir.1984); *Buehl v. Lehman,* 802 F.Supp. 1266, 1271 n. 9 (E.D.Pa.1992).

In considering a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genu-

---

1. Plaintiff is serving a sentence of 30 to 100 years of imprisonment imposed on August 4, 1981 for a murder and eight attempted murders.

ine issue of material fact, and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Arnold Pontiac–GMC, Inc. v. General Motors Corp.,* 786 F.2d 564, 568 (3d Cir. 1986).

Only facts that may affect the outcome of a case under applicable law are "material." All reasonable inferences from the record must be drawn in favor of the non-movant. *Anderson,* 477 U.S. at 256. Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which he bears the burden of proof. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).

From the evidence of record, as uncontroverted or viewed in a light most favorable to plaintiff, the pertinent facts are as follow.

Plaintiff and Ramona Africa never obtained a marriage license. No return of a celebration of marriage for the two was ever filed with the Commonwealth. They never participated in a formal marriage ceremony.

On or about November 18, 1980, plaintiff attended a meeting in Holmesburg Prison. An unspecified number of MOVE members who were also in prison with plaintiff and several other individuals who acted as "legal runners" for MOVE members, including Ms. Africa, were present at this meeting.

The purpose of the meeting was to discuss the legal situation and strategy of the MOVE members. At some point, however, marriage between Ramona Africa and plaintiff was discussed by those present "as a family." Plaintiff and the others present at the meeting considered themselves to be members of the same family. There were readings from MOVE guidelines regarding marriage. Plaintiff and Ms. Africa essentially said "we're going to be together, okay, I'm glad to be with you because I see that you have the whole in your mind and not just individuali-ty" and "this will work, because its productive, it's going in the same direction and, you know, we believe that something like that will be healthy."

In a declaration Ms. Africa states simply that she is married to plaintiff. She provides no information about when, where or how such a marriage was entered. No affidavits or testimony from others allegedly present at the November 1980 meeting have been submitted. Plaintiff cannot produce documents or records regarding the alleged marriage or MOVE guidelines regarding marriage.

As conceived of by MOVE, marriage "is not limited to personal relationships" such as "civil contracts" or those "legitimized by an authority or recognized by certain institutions." Marriage is being "connected with everything." It entails "marrying all life" as "everything is connected."

Plaintiff identified Ramona Africa as his wife in his recent requests for visitation. Plaintiff identified Ramona Africa as his "sister" on a list of persons authorized to visit plaintiff dated August 19, 1981. On lists dated July 7, 1982, February 16, 1983 and July 14, 1994, plaintiff identified Ramona Africa as a "friend."

Plaintiff identified Alberta Wicker Africa, not Ramona Africa, as his next of kin in a cumulative adjustment review on August 17, 1995. Plaintiff states in a brief that he did so "because we are all a close family and we are all sisters, brothers, friends, etc." Plaintiff has a will. Ramona Africa is not a beneficiary.

Plaintiff had an intimate relationship with Davita Smith by whom he has a nineteen year old daughter. He states, however, that the two were not married and the whereabouts of Ms. Smith are unknown.

Plaintiff has argued that he "has his own system of marriage" and that defendants have "no way of really knowing if the plaintiff is married or not to Ramona Africa." It is plaintiff, however, who bears the burden of proving the marriage. The issue is whether one can reasonably conclude from the record presented that plaintiff and Ms. Africa are married under the law of Pennsylvania.

■ As it is undisputed that plaintiff did not obtain a marriage license, he cannot show that a statutory marriage was entered into. *See* 23 Pa.C.S.A. § 1301(a). Parties may, however, enter into common law marriage without a license. *See Buradus v. General Cement Products Co.*, 356 Pa. 349, 52 A.2d 205, 208 (1947).

■ A common law marriage is created when there is an express agreement between the parties by an exchange of words in the present tense spoken with the specific mutual purpose of creating the legal relationship of husband and wife. *Commonwealth v. Wilson*, 543 Pa. 429, 672 A.2d 293, 301 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 364, 136 L.Ed.2d 255 (1996); *In re Estate of Manfredi*, 399 Pa. 285, 159 A.2d 697, 700 (1960); *Commonwealth v. McLean*, 387 Pa.Super. 354, 564 A.2d 216, 220 (1989). It is a "civil contract." *In re Estate of Stauffer*, 504 Pa. 626, 476 A.2d 354, 357 (1984).

■ The proponent of the marriage must offer "proof of an agreement to enter into the legal relationship of marriage at the present time." *Id.* (citing *Estate of Gavula*, 490 Pa. 535, 417 A.2d 168, 171 (1980)). Evidence of a general reputation of marriage and constant cohabitation may give rise to a rebuttable presumption of marriage. *Id.* at 171 n. 7.

■ The burden of proving a common law marriage is "a heavy burden." *Id.*; *In re Estate of Stauffer*, 476 A.2d at 356. "The professed contract should be examined with great scrutiny and it should plainly appear that there was an actual agreement entered into, then and there, to form the legal relationship of husband and wife." *Baker v. Mitchell*, 143 Pa.Super. 50, 17 A.2d 738, 741

(1941). *See also In re Stevenson's Estate*, 272 Pa. 291, 116 A. 162, 165 (1922) (finding words "you are my wife ... from tonight on we are married" and agreement of other party thereto insufficient to establish common law marriage in view of surrounding circumstances and conduct). This reflects the policy of Pennsylvania not to encourage common law marriage. *See Estate of Gavula*, 417 A.2d at 171.[2]

Defendants argue with force that there is no evidence that plaintiff and Ramona Africa uttered words exhibiting their present intention (words in praesenti) specifically to create the legal relationship of husband and wife. Plaintiff does not dispute defendants' contention that he "does not believe in the legal way that people may be married in common law marriage." Plaintiff does not even allege that he and Ramona Africa intended validly to be married under the law of Pennsylvania and exchanged words to effectuate this.

There is no evidence that plaintiff and Ms. Africa enjoyed a general reputation of marriage. Plaintiff "doubt[s]" that he publicized his putative marriage in any way. Plaintiff clearly cannot show cohabitation.

Moreover, at various times after November 1980 and before visitation privileges were in jeopardy, plaintiff affirmatively described his relationship with Ramona Africa as other than spousal.[3] The words spoken as related by plaintiff do not "plainly" show the making of a "civil contract" or "actual agreement" to form the legal relationship of husband and wife. Further, one cannot reasonably conclude that with whatever words he uttered in November 1980, plaintiff intended to enter a legal relationship of marriage with someone he then declared to be a friend and MOVE

---

**2.** Common law marriage in this country is an anachronism. It "was a historical necessity since the social conditions of pioneer society made access to clergy or public officials difficult." *DeSanto v. Barnsley*, 328 Pa.Super. 181, 476 A.2d 952, 955 (1984). By 1991, common law marriage was recognized in only thirteen states. *See* Kathryn Vaughan, the Recent Changes to the Texas Informal Marriage Statute: Limitation or Abolition of common Law Marriage, 28 Hous. L.Rev. 1131, 1135 (1991). The incongruity of continuing to recognize common law marriage in Pennsylvania long after the historical reasons for it had disappeared was noted

as early as 1944. *See* The Decline and Fall of Common–Law Marriage in Pennsylvania, 18 Temp. U.L.Q. 264, 266 (1944). Of course, the undertaking of a common law marriage in prison by a prisoner and a visitor has particular ramifications.

**3.** Plaintiff asks the court to "disregard" his prior characterizations of Ms. Africa as other than his wife, but offers no explanation for them. These admissions are substantive evidence. *See* Fed. R.Evid.801(d)(2)(A).

sister for the following three and a half years.

Plaintiff is not without recourse. The court appreciates that plaintiff prefers "his own system of marriage" and apparently eschews the "legal way" persons may effect a marriage. Nevertheless, to enter into a valid contract of marriage one must conform with the legal requirements of the state in which it is undertaken. If plaintiff and Ramona Africa truly wish to be legally married, for whatever motive, they may proceed to do so. Prisoners retain the fundamental constitutional right to marry. *Turner v. Safley*, 482 U.S. 78, 95–96, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). There is no apparent reason from the record to refuse Ms. Africa access to plaintiff for the purpose of marriage even if she might otherwise be properly excluded under the visitation policy regarding former inmates. *See Buehl*, 802 F.Supp. at 1271. Once married, assuming Ms. Africa did not breach any prison rule or engage in inappropriate conduct, there is no apparent reason thereafter to deny her visitation with plaintiff. On the record presented plaintiff cannot sustain an equal protection claim. Defendants are entitled to summary judgment in this action. Their motion will be granted. An appropriate order will be entered.

### *ORDER*

**AND NOW**, this day of March, 1998, upon consideration of defendants' renewed Motion for Summary Judgment and plaintiff's response thereto, consistent with the accompanying memorandum, **IT IS HEREBY ORDERED** that said Motion is **GRANTED** and accordingly **JUDGMENT is ENTERED** in the above action for defendants and against plaintiff.