J-A33038-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BOBBIE S. BROWN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| HARRY S. MAZER | |
| Appellee | No. 1430 EDA 2014 |

Appeal from the Order Entered April 29, 2014
In the Court of Common Pleas of Chester County
Civil Division at No.: 2013-07667-Dl

BEFORE:  LAZARUS, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                **FILED JANUARY 20, 2015**

Bobbie S. Brown appeals the trial court's April 29, 2014 order that granted Harry S. Mazer's petition for declaratory judgment and dismissed Brown's divorce complaint.  We affirm.

The trial court summarized the procedural history of this case as follows:

> On August 7, 2013, [Brown] filed a Divorce Complaint averring [that] the parties were married on May 30, 1983, by common law.[1]  [Brown] averred that the parties lived together as husband and wife until [Mazer] left in October 2009.  On August 23, 2013, [Mazer] filed a Petition for Declaratory Judgment to Determine Validity of Marriage challenging [Brown's] averment that a common law marriage existed.
>
> [1]  [Brown] stated at trial that she and [Mazer] declared their present intention to be married a second time on the

---

[*]   Retired Senior Judge assigned to the Superior Court.

following weekend, June 6th or 7th, 1983, at Cove Haven, Pennsylvania.

A hearing on [Mazer's] Petition was conducted on February 24, 2014 and continued on February 28, 2014. On April 29, 2014, [the trial court] issued an Opinion and Order [that granted Mazer's petition, found that there was no common law marriage, and dismissed Brown's divorce complaint. Brown] filed an appeal on May 2, 2014, and on May 7, 2014[, the trial court] issued a Rule 1925(b) Order. Thereafter, [Brown] properly filed a Concise Statement of Matters Complained of on Appeal [pursuant to Pa.R.A.P. 1925(b)].

Trial Court Opinion ("T.C.O."), 7/2/2014, at 1-2 (citations to record and some footnotes omitted).

Brown presents one issue for our review:

Whether conflicting testimony over words of present intent coupled with twenty-six years of cohabitation and substantial evidence of a general reputation of marriage together with significant documentary support admitting marriage is sufficient to establish that a common law marriage existed as of May 30, 1983?

Brown's Brief at 3.

Our standard of review is as follows:

In reviewing a declaratory judgment action, we are limited to determining whether the trial court clearly abused its discretion or committed an error of law. If the trial court's determination is supported by the record, we may not substitute our own judgment for that of the trial court. The application of the law, however, is always subject to our review.

*Vignola v. Vignola*, 39 A.3d 390, 393 (Pa. Super. 2012) (quoting *Bianchi v. Bianchi*, 859 A.2d 511, 515 (Pa. Super. 2004)). Additionally, this Court:

must accept findings of the trial court that are supported by competent evidence of record, as our role does not

- 2 -

> include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.
>
> *Hogrelius v. Martin*, 950 A.2d 345, 348 (Pa. Super. 2008). When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, [and] the court is free to choose to believe all, part, or none of the evidence presented.

*Mackay v. Mackay*, 984 A.2d 529, 533 (Pa. Super. 2009) (some citations and quotation marks omitted).

We note that the General Assembly has abolished common law marriage.

> No common-law marriage contracted after January 1, 2005, shall be valid. Nothing in this part shall be deemed or taken to render any common-law marriage otherwise lawful and contracted on or before January 1, 2005, invalid.

23 Pa.C.S.A. § 1103. Brown has alleged that the marriage predated the abolition. Therefore, if proven, the common law marriage would be viable.

Because common law marriage generally is disfavored, the burden to prove its existence is high:

> A common law marriage can only be created by an exchange of words in the present tense, spoken with the specific purpose that the legal relationship of husband and wife is created by such exchange. The burden to prove a common law marriage rests on the proponent of the marriage and such a claim must be reviewed with great scrutiny.

*Bell v. Ferraro*, 849 A.2d 1233, 1235 (Pa. Super. 2004).

- 3 -

Our Supreme Court has explained the presumptions and proof required in cases of common law marriage as follows:

Generally, words in the present tense are required to prove common law marriage. Because common law marriage cases arose most frequently because of claims for a putative surviving spouse's share of an estate, however, we developed a rebuttable presumption in favor of a common law marriage where there is an absence of testimony regarding the exchange of *verba in praesenti*. When applicable, the party claiming a common law marriage who proves: (1) constant cohabitation; and, (2) a reputation of marriage which is not partial or divided but is broad and general, raises the rebuttable presumption of marriage. Constant cohabitation, however, even when conjoined with general reputation are not marriage, they are merely circumstances which give rise to a rebuttable presumption of marriage.

Here, however, we are presented with the problem of whether this rebuttable presumption pertains when both parties are alive and able to testify regarding the formation of the marriage contract. We have stated that the rule which permits a finding of marriage duly entered into based upon reputation and cohabitation alone is one of necessity to be applied only in cases where other proof is not available. The "necessity" that would require the introduction of evidence concerning cohabitation and reputation of marriage is the inability to present direct testimony regarding the exchange of *verba in praesenti*. We held in ***In re Estate of Stauffer***, 504 Pa. 626, 476 A.2d 354 (1984), that the Dead Man's Act prohibited the purported wife's testimony regarding the exchange of marital vows with her alleged common law husband. There, we noted that the inability of the putative widow to present any testimony regarding the exchange of vows did not prevent her from proving a common law marriage. "Where there is no such proof available," we held, "the law permits a finding of marriage based upon reputation and cohabitation when established by satisfactory proof." ***Id.*** at 632, 476 A.2d at 357.

We have not, however, dispensed with the rule that a common law marriage does not come into existence unless the parties uttered the *verba in praesenti*, the exchange of words in the present tense for the purpose of establishing the relationship of

- 4 -

husband and wife. We have allowed, as a remedial measure, a rebuttable presumption in favor of a common law marriage based on sufficient proof of cohabitation and reputation of marriage where the parties are otherwise disabled from testifying regarding *verba in praesenti*. However, where the parties are available to testify regarding *verba in praesenti*, the burden rests with the party claiming a common law marriage to produce clear and convincing evidence of the exchange of words in the present tense spoken with the purpose of establishing the relationship of husband and wife, in other words, the marriage contract. In those situations, the rebuttable presumption in favor of a common law marriage upon sufficient proof of constant cohabitation and reputation for marriage, does not arise.

By requiring proof of *verba in praesenti* where both parties are able to testify, we do not discount the relevance of evidence of constant cohabitation and reputation of marriage. When faced with contradictory testimony regarding *verba in praesenti*, the party claiming a common law marriage may introduce evidence of constant cohabitation and reputation of marriage in support of his or her claim. We merely hold that if a putative spouse who is able to testify and fails to prove, by clear and convincing evidence, the establishment of the marriage contract through the exchange of *verba in praesenti*, then that party has not met its "heavy" burden to prove a common law marriage, since he or she does not enjoy any presumption based on evidence of constant cohabitation and reputation of marriage.

*Staudenmayer v. Staudenmayer*, 714 A.2d 1016, 1020-21 (Pa. 1998) (some internal citations, quotation marks, and footnotes omitted). Here, because both parties are living and were able to testify, Brown must prove that words in the present tense were exchanged, and she does not have the benefit of a rebuttable presumption. However, evidence of cohabitation and a reputation of marriage is permissible when, as here, there is a disagreement about whether words were exchanged.

At the hearing, Brown testified that in May 1983, she and Mazer exchanged words of present intent. Notes of Testimony ("N.T."), 2/28/2014, at 10. Brown also said they exchanged words of present intent a second time the following weekend. *Id.* at 37. Brown produced a document that she wrote that read "Yeah were [*sic*] married" that was posted on a corkboard in the parties' apartment. *Id.* at 10-11. Brown testified that Mazer represented himself as married to Brown on his social security application, on medical forms, in newspaper articles and advertising for their business, and to customers. *Id.* at 13, 19, 24, 25-27. Brown represented herself as married to Mazer in her social security application. *Id.* at 14, 17. Brown admitted that she filed her income tax forms as single, but claimed that the accountant filled the forms out and she never reviewed them. *Id.* at 51-52. Brown admitted that she went for a blood test in furtherance of marrying another man, but she denied that she applied for the marriage license. *Id.* at 63-65, 67-76, 83. Brown also presented witnesses who testified that Brown and Mazer had a reputation of marriage. N.T., 2/24/2014, at 11, 15; N.T., 2/28/2014, at 86-87.

Mazer testified that he did not exchange words of present intent with Brown. N.T., 2/24/2014, at 24. He maintained that he never referred to Brown as his wife. *Id.* at 73. Mazer testified that Brown periodically would bring up the idea of getting married, but that he did not want to marry. *Id.* at 105. When asked about the social security application, Mazer, upon the advice of counsel, refused to testify and invoked his right to remain silent.

*Id.* at 26-27, 131. Mazer testified that certain documents that listed him and Brown as married, such as hotel registrations, holiday cards, physician information and emergency contacts, and newspaper articles and advertisements, were completed by Brown. *Id.* at 27-28, 33, 38-41, 43, 44, 46-47, 59-60, 65. Mazer also produced documents, such as a mortgage, tax forms, and patient information forms, that he filled out indicating his marital status as single. *Id.* at 105, 107-08, 109. Mazer stated that Brown drafted his will with an attorney and he just signed it without reading it. *Id.* at 31-33.

Mazer presented a witness who testified that Brown had received a blood test for a marriage license with another man. N.T., 2/24/2014, at 19. The attorney who drafted the parties' powers of attorney and medical directives testified that Brown told him that the parties were not married and that he would have drafted the documents differently had he believed that the parties were married. *Id.* at 81-82. That same attorney testified that Brown provided him with the language to include in Mazer's will. *Id.* at 83. When Mazer learned that the deed listed the parties as husband and wife, Mazer directed his attorney to try to correct the deed. *Id.* at 85. Mazer presented other witnesses who testified that the parties said they were not married, and the witnesses did not believe that the parties were married. *Id.* at 98-99, 141-44, 154-55, 161-63.

Here, there were two contradictory stories of the parties' relationship. Therefore, credibility is the determinative factor. The trial court as fact-

finder makes that determination.  **_See Mackay_**, _supra_.  The trial court made

the following findings:

> Our credibility determination began with an examination of [Brown's] credibility relating to the events of February and August 1986.  It is [Brown's] contention that at that time the parties had been married almost three years.  Yet,  by [Brown's] own admission, in 1986 she presented herself to a doctor so that a sample of her blood could be drawn because [Brown] had the intention of marrying another man, Yehiel Zoor ("Mr. Zoor") but she did not intend to file for divorce from [Mazer].
>
> Additionally, six months earlier, in February 1986, an application for a marriage license was filed in Philadelphia County.  [Brown] testified that she never applied for a marriage license with Mr. Zoor.  [Brown] believed the personal information provided for the application: (1) her date of birth; (2) her father's full name; (3) her father being deceased; (4) her mother's full maiden name; and (5) her mother's address, was known to Mr. Zoor. [Brown] suggested that Mr. Zoor may have completed the application with a woman impersonating her.  She volunteered that Mr. Zoor had hired a woman to make her jealous because [Brown] sought to end their relationship when [Mazer] discovered the affair.   [The trial court] found [Brown's] explanation of how [the marriage license application] was filed without her knowledge to be implausible, especially taken together with her testimony that six months later she voluntarily submitted to a blood test in furtherance of obtaining a marriage license so that she and Mr. Zoor could marry.
>
> [The trial court] determined that [Brown], herself, did not act as if she believed she was married to [Mazer] when she took steps necessary to marry another man without seeking a divorce from [Mazer].  As a result, [the trial court] did not find her testimony that there was a common law marriage created in 1983 . . . to be credible.

T.C.O. at 6-7 (citations to record omitted).

Further, the trial court specifically found Mazer to be credible. While acknowledging that both parties had not been consistent in representing themselves as single or married, the court stated:

Unlike [Brown's] explanations for the inconsistencies in her history of events, [the trial court] found [Mazer's] explanations for his inconsistencies more plausible and believable. [Mazer's] most questionable actions were: (1) executing a Will without reading it; (2) swearing that [Brown] was his wife on a Deed that transferred property to the parties as married; and (3) declaring on a social security benefits application that [Brown] was his spouse. These actions may have consequences outside [the trial] court's jurisdiction, but are not uncommon. Persons execute documents without reading them, even wills. Individuals misstate their marital status for short term gains; *i.e.* to obtain certain benefits or to lessen tax liabilities. There are a variety of motivations for misstating a marital status. In this case, [the trial court] found that [Mazer] acted to "keep the peace" between himself and [Brown].

T.C.O. at 9 (citations to record and footnotes omitted).

Additionally, in its order and opinion, the trial court found as follows:

[The trial court] found [Mazer] credible in his testimony that he executed [the will, the deed, and the social security application] because he was asked by [Brown] to sign them. He testified [Brown] filled in the information on the patient forms. He signed the blank forms. He testified it was [Brown] who had the Will drafted, and he did not read the Will before signing it. [The trial court] found [Mazer's] reasons for acting as he did reasonable and credible. As for the Deed and the Social Security Administration application, [Mazer's] actions, in yielding to [Brown's] demands, may have been unwise, but his explanation that he did so to "keep the peace" rings true to [the trial court].

[The trial court found that Mazer's] position [was] corroborated by evidence he presented. First, [Mazer] presented [Brown's] tax returns asserting she was single for the years 2007 through 2011. [Brown] explained that she signed but did not review the returns in any of those years. [The trial court] did not find this

testimony to be credible. Second, [Mazer] presented a marriage application filed in Philadelphia County on February 27, 1986 . . . and a blood test taken on August, 7, 1986 . . . . [Brown] denied filing for a marriage license. Again, [the trial court] did not find [Brown's] explanation credible, especially in light of [Brown] admitting she went to have the blood test. Thus, [the trial court found that Brown] acted in a manner inconsistent with her present allegation that she was married in May 1983.

Trial Court Opinion and Order, 4/29/2014, at 8.

Based upon our review of the record, the trial court did not abuse its discretion in rendering its credibility determinations. It is clear that the trial court considered all of the testimony in reaching those conclusions. Further, the record supports the trial court's conclusions that, based upon those credibility determinations, the evidence did not suffice to meet the burden of proof required to establish a common law marriage.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/20/2015</u>