**BRANDYWINE PAPERBOARD MILLS, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ZITTLE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 25, 2000.

Decided May 11, 2000.

Gayle Frink–Johnson, Blue Bell, for petitioner.

John A. Boris, Philadelphia, for respondent.

Before SMITH, J., LEADBETTER, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issue presented is whether the Workers' Compensation Appeal Board (Board) erred in affirming the decision of the Workers' Compensation Judge (WCJ) that Karen Mack Zittle (Claimant) established a common law marriage between herself and Richard E. Zittle, Jr. (Decedent), now deceased. We hold that the WCJ properly held that the parties were married under common law based on the fact that the parties had a "private" marriage ceremony in December of 1986 and the parties lived together continuously as husband and wife. Thus, we affirm the decision of the Board.

The relevant facts of this case are as follows. On December 29, 1991, Decedent, then age twenty-one, sustained a head injury in the course and scope of his employment with Brandywine Paperboard Mills (Employer) which resulted in his death on January 10, 1992. Employer accepted liability and the appropriate compensation documentation was entered into for the payment of workers' compensation benefits on behalf of Decedent's two minor children. Payments were made payable to Claimant, the natural guardian and mother of the minor children. Claimant then filed a fatal claim petition alleging that she and Decedent were husband and wife under common law and, thus, she was entitled to benefits.

In support of Claimant's petition, she testified on her own behalf. Claimant testified that she had lived with Decedent from the time when their first of two children was born on January 16, 1987. From that time, they lived together continuously until Decedent's death. Claimant also testified that in December 1986, a "private" marriage ceremony was conducted where Decedent handed Claimant a ring and said he wanted her to be his wife and she accepted.

In further support of her common law relationship, Claimant testified as follows:

1. She called Decedent "my husband" or "JR."

2. Preschool officials addressed mail to her as "Mrs. Zittle."

3. Car insurance carried by the couple was in the name of "Richard Zittle and Karen Zittle."

4. She addressed holiday cards, "To my husband," and Decedent reciprocated with the salutation, "to my wife."

5. Claimant testified that Decedent's parents considered her to be their "daughter-in-law," and Christmas cards and birthday cards were so addressed to her: "to my daughter-in-law with love from Mom and Dad Zittle."

6. She held herself out to her landlord as Decedent's wife.

7. Claimant did not work and was dependent upon Decedent who paid all living expenses and managed all financial matters.

8. Claimant was named a beneficiary on Decedent's life insurance policy.

On cross-examination, Claimant admitted the following. She and Decedent did not share a joint bank account. The parties were going to have a church wedding on February 8, 1992, although no announcements had been sent, there had been no application for a marriage license, and no blood test had been taken. As to the purpose for the church ceremony, Claimant testified, "Basically, just to be married in the eyes of GOD, and for the children's sake." Claimant did not wear a wedding ring, either before or after the death of Decedent.

In opposition of the fatal claim petition, Employer presented the following evidence. Decedent's death certificate noted that he was "single" based on information supplied by his father. On a 1990 federal tax return, Decedent filed as head of household, naming Claimant as having received funds for child care, noting a different address for Claimant. A 1992 interest statement from Provident National Bank

showed interest earned of $18.26 in an account in Decedent's name alone.

Based on the above evidence, the WCJ held that it was the intention of the couple to form a marital relationship as they looked to the imminent birth of their first child which took place on January 16, 1987. The WCJ credited Claimant's testimony that the couple had a "private" ceremony to assure the legitimization of their yet unborn child. The WCJ also credited Claimant's testimony that the couple lived together continuously in a monogamous relationship and acted as husband and wife. Thus, the WCJ held that Claimant established that she had a common law marriage with Decedent and was therefore entitled to compensation benefits.

Employer appealed the decision of the WCJ to the Board. The issue before the Board was whether Claimant established she had a common law marriage with Decedent at the time of his death. In an Order dated October 25, 1999, the Board affirmed the decision of the WCJ. Employer then filed a petition for review with this Court.

On appeal,[1] Employer argues that Claimant did not establish a common law marriage between herself and Decedent entitling her to workers' compensation benefits. We disagree.

 The existence of a common law marriage is a mixed question of law and fact. *Duggan v. Workmen's Compensation Appeal Board (Litchfield Township)*, 131 Pa.Cmwlth. 184, 569 A.2d 1022 (1990). To create a common law marriage, there must be an exchange of words in the present tense spoken with the specific purpose

that the legal relationship of husband and wife by thereby created. *Staudenmayer v. Staudenmayer*, 552 Pa. 253, 714 A.2d 1016 (1998); *Commonwealth v. Wilson*, 543 Pa. 429, 672 A.2d 293 (1996). Although the precise words used are not alone controlling, proof of the actual intention of the parties to form a marriage contract is indispensable to the existence of a common law marriage. *Giant Eagle v. Workmen's Compensation Appeal Board (Bahorich)*, 144 Pa.Cmwlth. 552, 602 A.2d 387 (1992) quoting *Bowden v. Workmen's Compensation Appeal Board*, 31 Pa.Cmwlth. 476, 376 A.2d 1033 (1977).

In the case at bar, the WCJ found credible Claimant's testimony that she and Decedent exchanged vows in a private marriage ceremony. Claimant's testimony regarding that issue was as follows:

Q. When was it, and what words were exchanged?

A. It was in December of '87 or excuse me, '86. And he handed me a ring and said he wanted me to be his wife. And that was it.

Q. Did you accept—

A. Yes.

 We disagree with Employer that it was the intent of the parties to be married in some future time. There is substantial evidence for the WCJ to have concluded that it was the intent of the parties in December of 1986 to form a marital relationship as they looked to the imminent birth of their first child.[2] Common law marriage contract does not require any specific form of words; all that is essential is proof of an agreement to enter into the legal relationship of mar-

---

1. In workers' compensation cases where the party bearing the burden of proof prevailed before the WCJ and the Board took no additional evidence, our review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704; *Giant Eagle v. Workmen's Compensation Appeal Board (Bahorich)*, 144 Pa.Cmwlth. 552, 602 A.2d 387 (1992).

2. The WCJ is the ultimate finder of fact in a workers' compensation case, having sole authority to assess credibility of witnesses and resolve conflicting testimony. *Benson v. Workmen's Compensation Appeal Board (Haverford State Hospital)*, 668 A.2d 244 (Pa. Cmwlth.1995).

riage at the present tense. *Staudenmayer.*

Based on the WCJ's finding that the parties had a "private" marriage ceremony in December of 1986 where it was the parties intention to form a martial relationship and the fact that the parties lived together continuously as husband and wife raising two children until Decedent's death over five years later, we hold that the parties had a common law marriage. *See, Staudenmayer.*

Accordingly, the order of the Board is affirmed.

## *O R D E R*

AND NOW, this 11th day of May, 2000, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.