**Mildred TURNER Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. CIV.A. 02–6705.**

United States District Court, E.D. Pennsylvania.

Feb. 20, 2003.

Thomas D. Sutton, Esquire, Leventhal & Sutton, Langhorne, for Plaintiffs.

Nicholas Cerulli, Esquire, Social Security Administration, Philadelphia, for Defendants.

### MEMORANDUM & ORDER

KATZ, Senior District Judge.

On March 23, 1998, the Plaintiff, Mildred Turner, filed an application for Widow's Benefits and the Lump Sum Death Benefit under Title II of the Social Security Act, 42 U.S.C. §§ 401–433. This application was denied on June 24, 1998. The Plaintiff requested reconsideration, but the Commissioner denied this request on January 14, 2000. Plaintiff filed a request for a hearing on February 29, 2000. A hearing was held on December 19, 2001. Following the hearing, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff had not been the common law wife of Johann Haak, Jr. and therefore was not entitled to Social Security Act

benefits. Plaintiff filed a timely request for review. On June 7, 2002, the Appeals Council denied Plaintiff's request for review.

Following the Appeals Council decision, Plaintiff filed this suit pursuant to 42 U.S.C. § 405(g), which states in relevant part, "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir.1995) (citation omitted). The standard of review for all legal issues of the case is plenary. *See Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir.1999). Now before the court are the parties' motions for summary judgment.

To be eligible for Widow's benefits under 42 U.S.C. § 402(e), an applicant must be at least age sixty, unmarried, not entitled to retirement benefits higher than the widow's primary amount, and the widow of an individual who was fully insured under the Social Security Act. The Plaintiff, Mildred Turner married Lovell Turner in 1958 and was divorced from him in 1983. Plaintiff began living with Johann Haak, Jr. ("Mr.Haak") in 1984 and resided with him nearly continuously until his death on February 24, 1998. The parties do not dispute that Plaintiff is currently sixty-six, unmarried, and does not receive retirement benefits rendering her ineligible for Social Security benefits; the only issue in dispute is whether Plaintiff qualifies as a widow of Mr. Haak. Under the Social Security Act, an applicant is the widow of a fully insured individual, now deceased, if "the courts of the State in which such insured individual ... was domiciled at the time of death ... would find that the applicant and such individual were validly

married ... at the time he died." 42 U.S.C. § 416(h)(1)(A)(i).

■ Mr. Haak and Plaintiff were domiciled in Pennsylvania at the time of his death. Plaintiff and Mr. Haak never had a ceremonial marriage or obtained a marriage license in any state. Pennsylvania, however, is in the minority of states that recognizes common law marriage, although claims for this type of marriage are generally disfavored. *See Staudenmayer v. Staudenmayer,* 552 Pa. 253, 714 A.2d 1016, 1019–20 (1998). A common-law marriage in Pennsylvania "can only be created by an exchange of words spoken in the present tense, *verba de praesenti,* spoken with the specific purpose that the legal relationship of husband and wife be thereby created." *Commonwealth v. Gorby,* 527 Pa. 98, 110, 588 A.2d 902, 907 (1991) (citing *Commonwealth v. Smith,* 511 Pa. 343, 513 A.2d 1371 (1986)).

■ If there is no evidence of such an *in verba praesenti* exchange, there is a rebuttable presumption of common law marriage if the couple has been living together with the reputation of marriage. *See In re Garges,* 474 Pa. 237, 378 A.2d 307, 308–09 (1974); *Estate of Manfredi,* 399 Pa. 285, 291, 159 A.2d 697, 700 (1960). Invoking that presumption, however, is inappropriate where there is evidence of an *in verba praesenti* exchange. *See Giant Eagle v. WCAB,* 144 Pa.Cmwlth. 552, 555, 602 A.2d 387, 388 (1992) ("[R]esort to the presumption based upon proof of cohabitation and reputation is appropriate only where direct evidence of the alleged marriage agreement is unavailable."); *Commonwealth v. McLean,* 387 Pa.Super. 354, 564 A.2d 216, 220–21 (1989).

In this case, an exchange of wedding vows in the form of an *in verba praesenti* exchange took place after Plaintiff's graduation from Antioch University in June, 1988. Plaintiff and Mr. Haak exchanged

vows in front of family and friends at a graduation party. According to Plaintiff's testimony at the December 2001 hearing, Plaintiff's eldest daughter, Wilda Turner, stood between Plaintiff and Mr. Haak and asked her mother whether she would take Mr. Haak to be her lawfully wedded husband. Plaintiff responded, "yes." Wilda Turner asked Mr. Haak the same question and he said, "yes." Plaintiff's daughter then expressed that the couple would be together for the rest of their lives and that she could now feel more comfortable calling Mr. Haak "Papa," rather than "Mister" John. These events were corroborated by Plaintiff's younger daughter, Eula Davis, who testified that her sister Wilda performed the ceremony and her mother and Mr. Haak took vows. In a letter dated November 9.2002, Wilda Turner also recalled the impromptu ceremony.

The words spoken by Plaintiff and Mr. Haak meet the standards established by Pennsylvania courts for *in verba preasenti* establishment of a common law marriage. *See Beswick v. City of Philadelphia*, 185 F.Supp.2d 418, 430 (E.D.Pa.2001) ("The words need not be formalized ... performative utterances, such as 'I take you to be my wife' or 'I hereby marry you' are unnecessary. All that is essential is proof of an agreement to enter into the legal relationship of marriage at the present time."); *Brandywine Paperboard Mills v. W.C.A.B. (Zittle)*, 751 A.2d 1205 (2000) ("Although the precise words used are not alone controlling, proof of the actual intention of the parties to form a marriage contract is indispensable to the existence of a common law marriage.").

Following this exchange of vows in 1988, there is credible testimony regarding the intent and understanding of Mr. Haak and Plaintiff to be regarded as husband and wife. The couple lived together nearly continuously until Mr. Haak's death, they supported each other financially, introduced themselves at social occasions as husband and wife, and raised Plaintiff's adopted granddaughter together. When Mr. Haak left the Philadelphia area in 1989 to care for his ailing mother in Cleveland, Ohio, Plaintiff moved to Columbus, Ohio where Mr. Haak could visit her. A Columbus neighbor of the Plaintiff during this period submitted a letter stating that the couple introduced themselves as husband and wife and told others that Mr. Haak was their granddaughter's "grandpop." After Mr. Haak's mother's death in 1991, the couple returned to the Philadelphia area, where they lived together in an apartment. Haak's brother, Wilhelm Haak, submitted a statement stating that the Plaintiff was his sister-in-law and that he considered the two as husband and wife.

■ The ALJ's decision that Plaintiff and Mr. Haak did not have a common law marriage is not supported by substantial evidence. The ALJ does not dispute the fact that at the hearing,both Plaintiff and her daughter, Eula Davis, recounted the exchange of wedding vows in 1988,[1] but rather focuses on subsequent incidents where Plaintiff and Mr. Haak failed to identify themselves as married. For instance, on his application for Social Security Disability benefits on August 21, 1997, Mr. Haak he did not list a marriage to Plaintiff, but stated he was unmarried. On April 24, 1997, Mr. Haak did not check "married" on a medical form and listed Plaintiff as a reference. On her applica-

---

1. The government does, however, suggest in their Motion for Summary Judgment that the testimony is not credible because Plaintiff did not mention the 1988 ceremony when she first applied for widow's benefits, but only after the negative reconsideration decision in January 2000.

tion for disability benefits on January 16, 1998, Plaintiff did not indicate any current marriage to Mr. Haak, but noted her previous marriage to Mr. Turner. The ALJ also found that Plaintiff and Mr. Haak's actions in not filing joint tax returns, keeping separate bank accounts, and not owning joint property were evidence that they never intended to create the legal relationship of common law marriage.

■ Although the decision of both Mr. Haak and Plaintiff not to indicate their common law marriage status on three forms is relevant, this is not substantial evidence that the parties did not intend to become husband and wife by their 1988 ceremony. At the hearing, Plaintiff testified that she did not list her marriage to Mr. Haak on her 1998 disability application because there was no place on the form to indicate that she was a "common law wife" and she and Mr. Haak decided that they did not want to "lie to the government" because they knew they did not have a marriage license. Doubts such as this concerning the recognition of common law marriage by agencies like the Social Security Administration do not undermine the parties' intent to form a legal relationship by their 1988 *in verba praesenti* exchange. The filing of joint tax returns and common ownership of the residential property are not necessary to prove the existence of a common law marriage under Pennsylvania law. *See Brandywine Paperboard Mills v. WCAB (Zittle)*, 751 A.2d 1205, 1206–07 (2000) (recognizing a common law marriage where couple did not share a bank account or file joint tax return). The Plaintiff explained to the ALJ at the hearing that she and Mr. Haak could not buy their home together because she had bad credit, so Mr. Haak purchased it in his name only. *See* Transcript at 45. Although joint property or tax returns would support a finding of common law marriage,

their absence in the instant case does not defeat the testimony as to the *in verba praesenti* exchange, cohabitation, and reputation of marriage.

■ In his decision, the ALJ also points to the fact that Mr. Haak considered getting married and attempted to get a marriage license during his hospitalization in February 1998. The social worker assigned to Mr. Haak indicated in her notes that she had discussed with the couple their common law marriage status, the Chaplain's willingness to perform a marriage ceremony at the hospital, and the legal issues of applying for a marriage license by proxy. *See* Exhibit 22 at 6. The government notes in its Brief in Support of the Commissioner's Motion for Summary Judgment, that "this last minute attempt by Plaintiff to get 'formally married' days before Johann died only added further doubt as to whether Johann and Plaintiff actually believed they were legally married." Brief at 19. Contemplation of a civil or religious wedding ceremony does not negate a prior intent to establish a common law marriage. *See, e.g., Brandywine Paperboard v. W.C.A.B. (Zittle)*, 751 A.2d 1205, 1206 (2000) (finding that common law marriage existed despite plans for a church wedding more than six years after a private ceremony creating the common law marriage). In this case, the fact that both parties were seeking a validation of their marriage during the final stage of Mr. Haak's terminal illness does not constitute substantial evidence that they never intended to create a common law marriage.

The court is mindful that the Commonwealth does not favor the recognition of common law marriage because of the opportunities for fraud and confusion. *See In re Estate of Wagner*, 398 Pa. 531, 533, 159 A.2d 495, 497 (1960). The party alleging the marriage has a heavy burden of

proving the existence of a common law marriage and the claim must be reviewed with "great scrutiny." *Estate of Gavula*, 490 Pa. 535, 540–41, 417 A.2d 168, 171 (1980). Pennsylvania courts, however, continue to uphold the validity of common law marriage where there is evidence that the parties intended to establish the legal relationship of husband and wife. In this situation, Mr. Haak and the Plaintiff took vows of marriage before family and friends, shared a home for nearly fourteen years, raised a granddaughter together, and presented themselves to the public and their families as husband and wife. The court finds that their relationship both satisfies the requirements for a common law marriage in Pennsylvania.

The court declines to delay Plaintiff's award of benefits by remanding the case to the Commissioner for a rehearing. *See* 42 U.S.C. § 405(g).

An appropriate Order follows.

### ORDER

**AND NOW**, this 20th day of February, 2003, upon consideration of the parties' cross motions for summary judgment, it is hereby **ORDERED** that Plaintiff's motion is **GRANTED** and Defendant's motion is **DENIED.** The case is **REMANDED** to the Commissioner for a calculation of award and benefits.